**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **BRICE IKBY BINISSIA, Individually and**<br>**on Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**ABM INDUSTRIES, INC.; ABM**<br>**JANITORIAL SERVICES, INC.; ABM**<br>**JANITORIAL SERVICES – NORTH**<br>**CENTRAL, INC.; ABM JANITORIAL**<br>**SERVICES – MIDWEST, LLC;**<br>**AMERICAN BUILDING**<br>**MAINTENANCE CO.; ABM LAKESIDE,**<br>**INC.; ABM JANITORIAL MIDWEST,**<br>**INC.; ABM JANITORIAL SERVICES –**<br>**MID-ATLANTIC, INC.; ABM**<br>**JANITORIAL   SERVICES –**<br>**NORTHEAST, INC.; ABM JANITORIAL**<br>**NORTHWEST, INC.; ABM**<br>**JANITORIAL, SOUTH CENTRAL, INC.;**<br>**and ABM JANITORIAL SERVICES –**<br>**SOUTHEAST, LLC,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)   **Jury Demanded**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff, Brice Ikby Binissia, individually and on behalf of all others similarly situated, for their Complaint against the above-named Defendants (collectively, "Defendants"), state as follows:

### Nature of Plaintiffs' Claims

1.      This is a collective action under the Fair Labor Standards Act involving janitors whose punched-in times were illegally rounded by Defendants during the prior three years. Defendants' rounding practice deprived janitors of their earned wages and overtime.  As of

February 12, 2013, 202 current and former janitors have filed consent forms which are attached to this Complaint.

**Jurisdiction and Venue**

2.      This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. §1331, arising under 29 U.S.C. §216(b).  Venue is proper in this judicial district because Plaintiff resides in this district and certain of the facts and events giving rise to Plaintiffs' claims occurred in this judicial district.

**Parties**

3.      Plaintiff BRICE IKBY BINISSIA is a resident of Chicago, Illinois and worked as an hourly paid non-exempt janitor for Defendants in this District during the applicable FLSA statute of limitations period.  A copy of Plaintiff's consent form is attached hereto as Exhibit A.

4.      With fiscal 2012 revenues of over $4 billion and nearly 100,000 employees, ABM INDUSTRIES, INCORPORATED (hereinafter, ABM INDUSTRIES, INC.) is a publicly traded company that provides commercial cleaning and maintenance, facility engineering, energy efficiency, parking and security services for thousands of commercial, industrial, government and retail clients across the United States and various international locations. ABM's business services include ABM Janitorial Services, ABM Facility Services, ABM Facility Solutions, ABM Parking Services and ABM Security Services.

5.      ABM INDUSTRIES, INC. is incorporated in Delaware and its corporate headquarters are located at 551 Fifth Avenue, Suite 300, New York, NY 10176.

6.      ABM INDUSTRIES, INC. has a corporate structure consisting of wholly-owned and closely controlled business units and subsidiaries.

7.     ABM INDUSTRIES, INC. is the parent corporation of the other named Defendants in this lawsuit.

8.     ABM INDUSTRIES, INC. originated and controlled the rounding policy at issue in this lawsuit and implemented it through its wholly-owned and controlled subsidiaries that are named as Defendants in this lawsuit.  The wholly-owned and controlled subsidiary Defendants adopted the rounding policies and practices of ABM INDUSTRIES, INC.

9.     ABM INDUSTRIES, INC. was the "employer" of Plaintiff and the putative class, as the term "Employer" is defined under the FLSA.  Alternatively, ABM INDUSTRIES, INC. jointly employed the putative class members with its wholly-owned and controlled subsidiaries who are named as Defendants in this lawsuit.

10.     ABM JANITORIAL SERVICES, INC. provided janitorial services to businesses and entities across the country during the last three years.

11.     ABM JANITORIAL SERVICES, INC. is a wholly-owned and controlled subsidiary of ABM INDUSTRIES, INC.

12.     At all relevant times, ABM JANITORIAL SERVICES, INC., jointly with ABM INDUSTRIES, INC., directed, implemented and controlled the rounding policies and practices at issue in this lawsuit.  Further, they both ratified and implemented the rounding policies and practices on Plaintiff and the class members through the wholly-owned and controlled subsidiaries ABM JANITORIAL SERVICES – MIDWEST, LLC, ABM JANITORIAL SERVICES – NORTH CENTRAL, INC., AMERICAN BUILDING MAINTENANCE CO., ABM LAKESIDE, INC., ABM JANITORIAL MIDWEST, INC., ABM JANITORIAL SERVICES – MID-ATLANTIC, INC., ABM JANITORIAL SERVICES – NORTHEAST, INC.,

ABM JANITORIAL NORTHWEST, INC., ABM JANITORIAL, SOUTH CENTRAL, INC., and ABM JANITORIAL SERVICES – SOUTHEAST, LLC.

13.    During the prior three years, ABM JANITORIAL SERVICES, INC., was the "employer" of the Plaintiff and the putative class, as the term "Employer" is defined under the FLSA.

14.    Defendant ABM JANITORIAL SERVICES – NORTH CENTRAL, INC. is a California corporation that provides janitorial services to businesses and entities.  During the prior three years, ABM JANITORIAL SERVICES – NORTH CENTRAL, INC. was the "employer" of Plaintiff and certain members of the putative class, as the term "Employer" is defined under the FLSA.

15.    ABM JANITORIAL SERVICES – NORTH CENTRAL, INC. is a wholly-owned and controlled subsidiary of ABM INDUSTRIES, INC.

16.    Defendant ABM JANITORIAL SERVICES – MIDWEST, LLC is a manager-managed and controlled Delaware limited liability company that provides janitorial services to businesses and entities. ABM JANITORIAL SERVICES – NORTH CENTRAL, INC. is the manager of ABM JANITORIAL SERVICES – MIDWEST, LLC.  During the prior three years, Defendant ABM JANITORIAL SERVICES – MIDWEST, LLC was the "employer" of Plaintiff and certain members of the putative class, as the term "Employer" is defined under the FLSA.

17.    ABM JANITORIAL SERVICES – MIDWEST, LLC is a wholly-owned and controlled subsidiary of ABM INDUSTRIES, INC.

18.    Defendant AMERICAN BUILDING MAINTENANCE CO. is an Illinois corporation that provided janitorial services to businesses and entities.  During the prior three

years, AMERICAN BUILDING MAINTENANCE CO. was the "employer" of certain members of the putative class, as the term "Employer" is defined under the FLSA.

19.    AMERICAN BUILDING MAINTENANCE CO. is a wholly-owned and controlled subsidiary of ABM INDUSTRIES, INC.

20.    Defendant ABM LAKESIDE, INC. is a California corporation that provided janitorial services to businesses and entities.   During the prior three years, ABM LAKESIDE, INC. was the "employer" of certain members putative class, as the term "Employer" is defined under the FLSA.

21.    ABM LAKESIDE, INC. is a wholly-owned and controlled subsidiary of ABM INDUSTRIES, INC.

22.    Defendant ABM JANITORIAL MIDWEST, INC. is a California corporation that provided janitorial services to businesses.   During the prior three years, ABM JANITORIAL MIDWEST, INC was the "employer" of certain members of the putative class, as the term "Employer" is defined under the FLSA.

23.    ABM JANITORIAL MIDWEST, INC. is a wholly-owned and controlled subsidiary of ABM INDUSTRIES, INC.

24.    ABM JANITORIAL SERVICES – MID-ATLANTIC, INC. is a California corporation that janitorial services to businesses and entities.   During the prior three years, ABM JANITORIAL SERVICES – MID-ATLANTIC, INC. was the "employer" of certain members of the putative class, as the term "Employer" is defined under the FLSA.

25.    ABM JANITORIAL SERVICES – MID-ATLANTIC, INC. is a wholly-owned and controlled subsidiary of ABM INDUSTRIES, INC.

26.     ABM JANITORIAL SERVICES – NORTHEAST, INC. is a California corporation that provided janitorial services to businesses and entities during the recovery periods under the FLSA. During the prior three years, ABM JANITORIAL SERVICES – NORTHEAST, INC. was the "employer" of certain members of the putative class, as the term "Employer" is defined under the FLSA.

27.     ABM JANITORIAL SERVICES – NORTHEAST, INC. is a wholly-owned and controlled subsidiary of ABM INDUSTRIES, INC.

28.     ABM JANITORIAL NORTHWEST, INC. is a California corporation that provided janitorial services to businesses and entities. During the prior three years, ABM JANITORIAL SERVICES – NORTHWEST, INC. was the "employer" of certain members of the putative class, as the term "Employer" is defined under the FLSA.

29.     ABM JANITORIAL NORTHWEST, INC. is a wholly-owned and controlled subsidiary of ABM INDUSTRIES, INC.

30.     ABM JANITORIAL, SOUTH CENTRAL, INC. is a California corporation that provided janitorial services to businesses and entities. During the prior three years, ABM JANITORIAL SERVICES – SOUTH CENTRAL, INC. was the "employer" of certain members of the putative class, as the term "Employer" is defined under the FLSA.

31.     ABM JANITORIAL, SOUTH CENTRAL, INC. is a wholly-owned and controlled subsidiary of ABM INDUSTRIES, INC.

32.     ABM JANITORIAL SERVICES – SOUTHEAST, LLC is a California limited liability company that provided janitorial services to businesses and entities during the recovery periods under the FLSA. During the prior three years, ABM JANITORIAL SERVICES –

SOUTHEAST, LLC was the "employer" of certain members of the putative class, as the term "Employer" is defined under the FLSA.

33.     ABM JANITORIAL SERVICES – SOUTHEAST, LLC is a wholly-owned and controlled subsidiary of ABM INDUSTRIES, INC.

### Factual Background

34.     Thousands of janitors employed by the Defendants during the last three years have used punch cards, keycards, fingerprint scanners and key-number pads as their daily timekeeping system.

35.     For each of the timekeeping methods of punch cards, keycards, fingerprint scanners and key-number pads, Defendants have rounded the actual punch in and punch out times for at least some time during the last three years.

*i.*     ***Defendants' Practice of Rounding Punch Cards***

36.     Plaintiff worked as a janitor at approximately 13 different locations and buildings in downtown Chicago during the prior three years, including buildings on LaSalle Street, Jackson Boulevard, Dearborn Street, Chicago Avenue, Monroe Street and State Street.

37.     While working as a janitor at many of these locations, the Plaintiff used punch cards as a timekeeping method.

38.     Manual punch cards is a common timekeeping method used by Defendants and janitors.

39.     During the FLSA statutory recovery period, ABM instructed its supervisors to manually adjust punch times to conform with even hours and/or scheduled shift times, which was typically achieved by either writing an "8" next to each shift on the punch card or through

the preparation of spreadsheets, which reflect the scheduled shifts of the janitors and which are submitted to the regional payroll processing centers.

40.     The punch cards of Plaintiff were rounded from his actual punched in time to a rounded time in, to his detriment.

41.     The punch cards of Plaintiff were rounded from an actual punched out time to a rounded time out, to his detriment.

42.     Defendants have instructed Plaintiff's supervisors to round the actual punch in and punch out time on the punch cards from the actual minute that it is punched to a scheduled shift time.

43.     At the end of a pay period, Plaintiff's supervisors send the punch cards to the Defendants' payroll departments who then input and process the information into the proprietary payroll software system of ABM INDUSTRIES, INC. where a rounded time is used to calculate payroll and the compensation for the Plaintiff and putative class members.

44.     Plaintiff Binissia estimates that he often worked approximately an average of two hours per payperiod of unpaid overtime. Records indicating the number of hours that Plaintiff Binissia and worked are in the exclusive possession and control of Defendant.

45.     Evidence of Defendants' practice of rounding janitors' punch cards is wide-spread across the country and has occurred in at least two of Defendants' regions for a significant period of time during the last three years.

46.     For example, the United States Department of Labor investigated Defendants' rounding practices for janitors at the Philadelphia International Airport in Philadelphia, Pennsylvania.

47. ABM INDUSTRIES, INC.'S in-house attorneys in Texas handled the U.S. DOL investigation, including attending meetings and conferences with the U.S. DOL.

48. ABM INDUSTRIES, INC.'S in-house attorneys in Texas were aware of the U.S. DOL Investigation of the rounding practices at the Philadelphia International Airport and the investigation's outcome.

49. Because of improper rounding on punch cards where supervisors were instructed to write "8" over the punch times and stamps on the punch cards, identical to that describe above, the U.S. DOL investigation resulted in 21 janitors at the Philadelphia International Airport receiving an average back wage payment of $912 each.

50. The two-page U.S DOL Compliance Action Report states in pertinent part about the Philadelphia rounding:

> "Section violations – not all hours worked were counted due to inconsistent rounding practice, resulting incorrect tabulation of time cards. 21 employees due $19167.11. ER ATC and ATP BW by 8/13/2011. Large firm with multiple prior investigations. First investigation for this branch. Houston MODO directed CMPs be assessed."

51. Just like the locations all over Chicago where the Plaintiff's and janitors' punch cards were rounded, the janitors' punch cards at the Philadelphia International Airport were rounded to their detriment.

52. In *Las v. ABM*, the punch cards produced in the public record contained the identical rounding as found in the punch cards reviewed by the U.S. DOL investigation at the Philadelphia International Airport where an "8" was written over the punch time stamps on punch cards. *Las v. ABM*, 11 cv 5644 (N.D. Ill. 2011), Dkt. No. 34, Ex. 8; Dkt. 54, Exs. 10, 11.

53.     The identity of the janitors who used punch cards can be determined from the punch cards themselves, which are required to be kept by the Defendants pursuant to 29 C.F.R. § 516 and the FLSA.

*ii.*     **Defendants' Practice of Rounding by Electronic Timekeeping Systems and Software Programs**

54.     Three of the timekeeping systems used by Defendants during the last three years use electronic methods to record janitors' daily punch in and out times. Specifically, key cards, fingerprint scanners and key-number pads were used by Plaintiff and the putative class members.

55.     These three electronic time keeping mechanisms, and Defendants' proprietary payroll software programs, are configured and designed to round the janitors' punch times.

56.     The rounding for these three electronic timekeeping methods are ultimately codified in "Punch Summaries" that contain, *inter alia*:

-     a column showing the actual time the janitor punched in;

-     a column showing the rounded time for punching in;

-     a column showing the actual time punched out; and

-     a column showing the rounded time for punching out.

57.     The exact configurations of the software payroll programs used to improperly round the janitors' work time is in Defendants' exclusive possession and control.

58.     Many locations where ABM janitors work employ various biometric and other electronic timekeeping methods.

59.     Once the employee interfaces with the time clock device, all punch times become digital data that travels through the internet to ABM's servers where the information is received, sorted and processed by ABM's proprietary payroll software.

60. With just a few keystrokes, an ABM employee with sufficient electronic privileges can access the electronically reported hours for any employee in the nation, as sorted by, *inter alia*, region, subsidiary, entity, location or name.

61. Reports can be generated by the payroll software that will reflect the actual time in and rounded time in for each employee.

62. The identity of the janitors who used key cards, fingerprint scanners and key-number pads can be determined from the Punch Summaries, which contain the name of the employee, their actual punch in time, their rounded punch in time, their actual punch time out, and their rounded punch time out, and which are required to be kept by the Defendants pursuant to 29 C.F.R. § 516 and the FLSA.

### iii. Centralized Control: the Parent Corporation Controls All Regions' Wage and Hour Issues, Lawsuits and U.S. DOL Investigations

63. Defendants use regional payroll processing centers where employees input the manipulated data, either directly from the punch cards or spreadsheets, which are then processed through Defendants' proprietary payroll software programs. These software programs are also designed and configured to round janitors' work time. The wages actually paid to the janitors are based on the manipulated and rounded times, not on all actual time worked.

64. The setting of wage and hour policies and practices for Defendants' janitors is established by the parent corporation, ABM INDUSTRIES, INC., and then implemented across the country via its wholly-owned and controlled subsidiaries, including the Defendants.

65. ABM INDUSTRIES INC. has adopted a Corporate Code of Conduct which establishes ultimate control over Defendants' labor and employment issues by ABM INDUSTRIES, INC. This Code of Conduct states as follows:

**Code of Business Conduct**

Our Code of Business Conduct was approved by our Board of Directors. **It applies to all directors, officers and employees of ABM and its subsidiaries and affiliates, wherever located.** In this Code, when we refer to "the Company", we are referring generally to ABM, it subsidiaries and affiliates. Our Board, together with our Chief Executive Officer and Chief Financial Officer and all of the Company's other leaders and employees, stand behind the Code. While our Code of Business Conduct requires us to comply with applicable laws and regulations where we do business, it is not only about compliance. Rather, it provides us with an ethical framework for achieving our goals by focusing on areas of ethical risk and providing tools to help our directors, officers and employees to recognize and deal with ethical risks, to report unethical conduct and to preserve and nurture our culture of honesty, integrity and accountability.

*Compliance with Laws, Regulations and Policies*

Compliance with laws, rules and regulations is core to our business. We conduct our activities in compliance with all laws, rules and regulations of the jurisdictions in which we do business. We comply with both the letter and the spirit of the law. Fraud, theft, dishonesty, embezzlement, misappropriation or falsification in connection with your duties for the Company are never tolerated and all such acts may result in immediate termination of employment for cause.

You are expected to obey and comply with all federal, state and local laws, regulations and ordinances, including but not limited to:

· Immigration related laws concerning the hiring of legally documented workers;

· **Employment laws concerning payment of minimum wage, overtime requirements, child labor and general working conditions**;

· Labor laws concerning worker organizing and bargaining activities;

· Health and safety laws concerning the workplace;

· Civil rights laws concerning harassment and job discrimination;

· Federal laws concerning racketeering and corrupt practices;

· Laws concerning unlawful influence of foreign officials and falsification of records;

· Laws concerning the proper maintenance of books, records and internal controls;

· Laws, regulations, and contract provisions in connection with the Company's government contracting activities; and

· Any other applicable federal, state or local law, regulation or ordinance.

**In addition, you are expected to be familiar with and comply with the Company's various policies and procedures. Violation of Company policies and work rules may result in disciplinary action, up to and including termination.**

We understand that you may be uncertain as to whether a transaction or course of conduct complies with applicable laws, rule and regulations. **When you are uncertain, it is expected that you will obtain advice from the Company's General Counsel and to act in accordance with that advice.**

*Fair Dealing*

Fairness is one of our core values and each employee is expected to deal fairly with the Company's customers, suppliers, competitors and other employees. You should not take unfair advantage of anyone through manipulation, concealment, abuse of confidential information, falsification, misrepresentation of material facts or any other unfair dealing practice. Unauthorized use of covert surveillance equipment, including video, photographic or recording devices, is strictly prohibited.

*Accounting and Recordkeeping*

As a public company, we periodically release certain information about our finances to the public. Accurate and honest recording and disclosure of information is important to appropriate public financial disclosure and also important to making responsible business decisions. The Company requires that all records involving its businesses be complete and accurate and that all required disclosures be timely, accurate and understandable. Many people associated with the Company, not just accountants and controllers, participate in the financial control and reporting processes of the Company. If you have any responsibility for any aspect of the Company's record keeping (including, but not limited to processing of cash receipts or processing or approval of payments; creation, processing or approval of invoices and credit memos; payroll and benefits decisions; submission or approval of expense reports and any and all other transactions; or the estimation of reserves or other claims or the amount of any accrual or deferral; or the recording of any of the foregoing in the Company's ledgers)

and/or the preparation of the Company's financial statements or other reports, you must see to it that complete and accurate books and records are maintained.

**Internal controls are an essential part of accounting and the effective operation of a business enterprise. They are designed to ensure the integrity of the accounting data in the Company's financial statements and reports. They also prevent inefficiency, waste and the improper use of the Company's funds or other assets. ABM has adopted certain more detailed policies and procedures on internal controls. These are made available to all employees who are involved with internal controls.**

A strong audit effort helps ensure compliance with established policies, procedures and controls and helps identify potential control deficiencies so that they may be promptly corrected. The Company's internal audit function is an essential resource, and it plays a critical role in providing management with evaluations of the effectiveness of internal controls over accounting, operational and administrative functions. If you receive inquiries from the Company's internal or independent auditors, accountants, or the Audit Committee you must respond promptly, fully and accurately.

The Company does not tolerate any subversion of the Company's systems of internal accounting controls, funds or assets for any illegal or improper purposes nor does it tolerate the making of false or misleading statements in any Company documents, reports or records. No undisclosed or unrecorded accounts may be established using the Company's funds or other assets. **Any employee who is directed to act in a manner that he or she believes is not in compliance with this Code should seek guidance and report the matter to the HelpLine, the General Counsel or the Internal Audit department.**

*Employee Health and Safety*

The Company is committed to a safe and healthy work environment for its employees at all times. You are expected to comply with established safety, health and environmental regulations and ABM's safety and environmental policies. To that end, you are prohibited from using or possessing alcohol or drugs in violation of any federal, state or local law, regulation or ordinance or Company policy at your workplace or in connection with your work, in a Company vehicle or in any motor vehicle when used in connection with Company business. You are also prohibited from threatening or using any threatening behavior or taking any violent actions at any time in the workplace or in connection with Company business. Finally, you are prohibited from possessing any firearm, ammunition, incendiary device or other weapon, at your workplace, in a Company vehicle or at any time in connection with Company business except for Company employees who are

security officers and specifically authorized to carry a weapon as part of a work assignment.

*Reporting Illegal or Unethical Behavior*

We encourage employees to talk to their supervisor, manager or human resource representative when in doubt about the best course of action to take in a particular situation. Any director or employee who believes another director, employee or any agent, consultant or contract worker is violating the Company's policies, the law, or any contract provisions in connection with the Company's government contracting activities or is engaging in any activity that could damage ABM's reputation is required to immediately call this to the attention of management, the Company's General Counsel or one or more of the following:

• Any person designated in this Code or the Commitments Policy as responsible for compliance in the specified area involved
• The Vice President of Internal Audit
• The Senior Vice President of Human Resources
• ABM's Compliance Hotline

The Compliance Hotline is a toll-free, confidential, third party service set up for employees to report possible violations of the law, this Code or other ABM policies. The Hotline is staffed 24 hours per day and calls can be accepted in any language. Callers may make reports anonymously if they choose. The Compliance Hotline can be reached at 1-877-253-7804. Reports are also accepted online at abmhotline.ethicspoint.com. All calls and online reports will be promptly forwarded to ABM's Corporate Headquarters for investigation and review. Employees may also report issues or problems by mail addressed to ABM Compliance, ABM Industries Incorporated, 551 Fifth Avenue, Suite 300, New York, NY 10176.

A failure to report a violation is itself a violation of this Code.

We do not tolerate retaliation against anyone who, in good faith, reports a possible violation of any law or Company policy. Any employee or manager who attempts to retaliate against an individual who has reported a violation or possible violation of this Code will face serious disciplinary action, up to and including termination.

*Penalties for Violations*

Violations of this Code or failure to cooperate with an internal investigation relating to an actual or apparent violation of this Code constitutes grounds for corrective action, including immediate termination of employment. In

addition, some Code violations may be serious enough to result in civil or criminal fines and/or imprisonment.

This policy places ABM INDUSTRIES, INC. in complete control of the Labor and Employment practices of Defendants and the other Subsidiaries, including those at issue in this lawsuit. Pursuant to this Code of Conduct, it would be a violation of this Code of Conduct for a Subsidiary to resolve or consider a wage and hour violation without guidance from ABM INDUSTRIES INCORPORATED'S Compliance department and/or general counsel to resolve this issue. This creates an absolute power of control by ABM INDUSTRIES INCORPORATED over labor and employment issues occurring at ABM INDUSTRIES INCORPORATED, its business units, and its Subsidiaries.

66.     As part of ABM INDUSTRIES, INC.'S 2010 10-K, ABM INDUSTRIES INCORPORATED'S CEO signed an SEC certification statement that certifies, among other things, that ABM Industries has implemented and monitored certain controls over its Subsidiaries. This certification attests that ABM INDUSTRIES INC.'S CEO has established and maintained disclosure controls within ABM INDUSTRIES INC.'S Subsidiaries so that material information regarding these Subsidiaries' financial information and the reliability of the financial information is reported directly to ABM INDUSTRIES, INC.'S. The violations described in this Complaint are material to the financial results of ABM INDUSTRIES, INC.

67.     Plaintiffs are also informed and believe, and based thereon allege, that each of ABM INDUSTRIES, INC.'S subsidiaries named as Defendants in this lawsuit were controlled by and acted in all respects pertinent to this action as the agent of ABM INDUSTRIES, INC. Plaintiffs are also informed and believe, and based thereon allege, that ABM INDUSTRIES, INC. and its Subsidiaries carried out a joint scheme, business plan, or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants.

ABM INDUSTRIES, INC.'S control over its Subsidiaries exceeds the control normally exercised by a parent corporation.

68.    ABM INDUSTRIES, INC.'s in-house counsel's office typically handles the investigations by the U.S. DOL and state departments of labor regarding Defendants' wage and hour policies and practices.

69.    ABM INDUSTRIES, INC.'s in-house counsel advises and instructs Defendants' regional locations and offices to implement or change its wage and hour policies and practices, including corrections and responses to U.S. DOL and state departments of labor investigations.

70.    ABM INDUSTRIES, INC.'s in-house counsel works in conjunction with top corporate officers at ABM INDUSTRIES, INC. and the Defendants at the subsidiary level to mandate and implement labor policies and practices nationwide, including those at issue in this collective action.

71.    Defendants advised their regions to control labor costs nationwide, as a district manager in Washington wrote in June 2009 regarding janitorial work: "We have been asked by Upper Management of ABM to cut labor in every area possible across the nation immediately."

72.    The corporate parent, ABM INDUSTRIES, INC., controlled and managed all payroll policies, practices and procedures for all regions, subsidiaries and affiliates, and specifically all policies, practices and procedures relating to the rounding of hours worked by hourly janitor employees.

73.    The corporate parent, ABM INDUSTRIES, INC., has only one corporate legal department, which serves ABM INDUSTRIES, INC. and all its regions, subsidiaries and affiliates.

74. During the last three years, ABM INDUSTRIES, INC. has and/or had a corporate legal department that contains a "Labor & Employment Group."

75. The ABM INDUSTRIES, INC. corporate legal department coordinates, with local counsel, the defense of all wage and hour class actions filed against ABM INDUSTRIES, INC., including all of its regions, subsidiaries and affiliates nationwide.

76. Members of the ABM INDUSTRIES, INC. corporate legal department are responsible for coordinating the implementation of all remedial payroll policies, practices and procedures mandated by the U.S. DOL and all State departments of Labor nationwide.

77. One of the functions of the ABM INDUSTRIES, INC. corporate legal department is to manage the risk exposure created by the implementation of payroll policies, practices and procedures for all regions, subsidiaries and affiliates, including the payroll policies, practices and procedures relating to the rounding of hours worked by the hourly janitor employees.

78. At all times relevant herein, ABM INDUSTRIES, INC. has implemented the payroll policy, practice and procedure of rounding hours worked by hourly paid janitors by training supervisors to submit Excel spreadsheets to the payroll department with payroll data for the hourly janitor employees they manage reflecting their respective scheduled shift times, not the actual hours worked.

79. At all times relevant herein, ABM INDUSTRIES, INC. has implemented the payroll policy, practice and procedure of rounding hours worked by hourly janitor employees by programming its proprietary payroll software to round electronic punch in times, regardless of the actual time worked, to reflect the scheduled shift time of the hourly janitorial employee.

80. At all times relevant herein, ABM INDUSTRIES, INC. has implemented the policy, practice and procedure of disciplining, and ultimately terminating, all hourly janitorial

employees who arrive after the start of their scheduled shift in all its regions, subsidiaries and affiliates.

81.     ABM INDUSTRIES, INC. established a policy that forbids the payment of overtime unless it is pre-approved.

82.     ABM INDUSTRIES, INC.'s policy and practice forbidding the payment of overtime unless it is pre-approved applied to each and every subsidiary and affiliate.

83.     As a result of Defendants' rounding practice as alleged herein, the Defendants benefited from reduced labor and payroll costs which, in turn, increased the earnings statements of the parent corporation, ABM INDUSTRIES, INC.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT – OVERTIME WAGES

**(Brought as a Collective Action by Plaintiff, Bryce Ikby Binissia,
on Behalf of All Others Similarly Situated)**

84.     Plaintiff re-alleges Paragraphs 1 through 83 as and for Paragraphs 1 through 83 of this Count I.

85.     Plaintiff brings this case as a collective action on behalf of himself and other similarly situated janitors pursuant to 29 U.S.C. §216(b) to recover unpaid overtime wages, liquidated damages, attorneys' fees and costs, and other damages owed.

86.     Plaintiff and the putative class members are hourly-paid, non-exempt, full-time janitors whom Defendants employed during the three year statutory period and whose daily punch in and punch out time was rounded as described above.

87.     The proposed collective class of similarly situated persons is defined as:

> "All individuals who were or are currently employed by the Defendants,
> their subsidiaries, affiliates, predecessors and/or successors, as janitors or
> other similarly titled positions throughout the United States at any time
> during the relevant statute of limitations, and who used punch cards, key

cards, fingerprint scanners and key-number pads to record time worked during the workweek and whose punched in and out times were rounded to their detriment."

88.     The above class definition excludes those class members in the settlements of *Las v. ABM*, 11 cv 5644 (U.S.D.C., N.D. Ill), *Khadera v. ABM*, 08 cv 417 (U.S.D.C., West. Dist. WA) and *Simpson v. ABM*, 10-2-33915-9 (SEA King County Superior Court, Washington) whose dates of employment do not go beyond the settlement and release periods of those three cases.

89.     Common questions of law and fact exist as to all members of the class and predominate over any questions that affect only individual members of the class.  These common questions of law and fact include:

   i)   whether Defendants' proprietary payroll program improperly rounded the punch in and out times for janitors who used keycards, fingerprint scanners and key-number pads; and

   ii)  whether Defendants' improperly rounded the punch in and out times on punch cards for janitors who used punch cards.

90.     Defendants operated under a scheme and practice, as described above, to deprive Plaintiff and the collective class of overtime compensation and thereby, increase their earnings statements and, ultimately, the parent corporation's share value.

91.     Section 207(a)(1) of the FLSA states that an employee must be paid overtime, equal to at least one and one half times the employee's regular rate of pay, for all hours worked in excess of 40 hours per week.

92.     Plaintiff and the putative class members were not paid for all hours worked in excess of 40 in a week in violation of the maximum hours provisions of the FLSA, to wit, 29 U.S.C. 207(a).

93.     While punched in, Plaintiffs and members of the collective class were subject to the control of Defendants and engaged in activities that were not undertaken for their own convenience, necessary for the performance of their duties for Defendants and integral and indispensable to their principal activities.  Despite this, Plaintiffs and other members of the collective class regularly were required to work "off the clock" as set forth herein that entitled them to compensation therefore.

94.     Defendants' rounding practices violated the overtime provisions of the FLSA because Defendants did not pay the overtime wages for all work performed by Plaintiff and the similarly-situated employees.

95.     Defendants' rounding practices as set forth herein violate the record-keeping requirements set forth in Section 29 U.S.C. § 211(c), and in 29 C.F.R. § 516.2(7)-(9).

96.     At all times relevant hereto, the action of Defendants to not pay premium pay for all hours worked over 40 in a week and its failure to keep accurate payroll records was willful in that Defendants knew that the FLSA required it to pay time and one-half for all hours worked over 40 in a workweek and Defendants knew that the FLSA required them to maintain true and accurate records.  The in-house counsel for ABM INDUSTRIES, INC. knows this from U.S. DOL investigations of its wage and hour policies and practices.

97.     As a direct and proximate result thereof, the Plaintiff and similarly situated janitors are due unpaid overtime and liquidated damages, pursuant to 29 U.S.C. § 216.

98.     Plaintiffs request that the Court authorize notice to the members of the collective class to inform them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. §216(b), for the purpose of seeking unpaid overtime compensation, liquidated damages under the FLSA, and the other relief requested herein.

99.     Plaintiff estimates that there are at least a thousand putative members of the collective class.  The precise number of collective class members can be ascertained by using Defendants' payroll and personnel records.

100.    As of February 13, 2013 there are approximately 202 current and former janitors who have opted into this collective action.  Please see attached Group Exhibit B.

101.    The opt-in plaintiffs to date used, *inter alia*, punch cards, keycards, fingerprint scanners and key-number pads to record time worked during the workweek.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.      Authorize notice at the earliest possible time informing the similarly situated janitors that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit if they worked regular hours or overtime hours in excess of forty hours in a week during the liability period;

B.      Order the Defendants to furnish to counsel a list of all names and last known addresses of all non-exempt hourly-paid janitors employed by Defendants who currently or previously worked for Defendants in the United States within three years of the filing of the original Complaint, and who used punch cards, keycards, fingerprint scanners and key-number pads as timekeeping methods and whose time was rounded to their detriment (except those excluded as set forth in para. 88 above);

C.      Declare and find that the Defendants committed one or more of the following acts:

   i.   Violated overtime provisions of the FLSA by failing to pay overtime wages to Plaintiffs and similarly situated persons who opt-in to this action; and

   ii.  Willfully violated the overtime provisions of the FLSA; and

   iii. Willfully violated the recordkeeping provisions of the FLSA;

D.      Award compensatory damages, including all pay owed, in an amount according to proof;

E.      Award liquidated damages on all compensation due accruing from the date such amounts were due;

F.     Award all costs and reasonable attorneys' fees incurred in prosecuting this claim; and

G.     For such further relief as the Court deems just and equitable.


JURY DEMANDED

Date: February 14, 2013

**Respectfully Submitted,**
**BRICE IKBY BINISSIA,**
**Individually and on Behalf of**
**All Others Similarly Situated.**


By: /s/ Thomas M. Ryan
        Thomas M. Ryan
        One of Plaintiffs' attorneys


Thomas M. Ryan                            Glen J. Dunn, Jr.
Law Offices of Thomas M. Ryan, P.C.       Glen J. Dunn & Associates
35 E. Wacker Drive, Suite 650             35 E. Wacker Drive, suite 650
Chicago, IL 60601                         Chicago, IL 60601
312.726.3400                              312.546.5056