**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BRICE IKBY BINISSIA and HALINA** | ) | |
| **SUCHECKA, Individually and on Behalf** | ) | |
| **of All Others Similarly Situated,** | ) | **Judge Joan B. Gottschall** |
| | ) | |
| **Plaintiffs,** | ) | **Magistrate Judge Daniel G. Martin** |
| | ) | |
| **v.** | ) | **No. 13 cv 1230** |
| | ) | |
| **ABM INDUSTRIES, INC.; ABM** | ) | |
| **JANITORIAL SERVICES, INC.; ABM** | ) | |
| **JANITORIAL SERVICES – NORTH** | ) | |
| **CENTRAL, INC.; ABM JANITORIAL** | ) | **Jury Demanded** |
| **SERVICES – MIDWEST, LLC; and** | ) | |
| **ABM JANITORIAL SERVICES –** | ) | |
| **SOUTHEAST, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR AMENDED MOTION FOR**
**CONDITIONAL COLLECTIVE ACTION CERTIFICATION**

Plaintiffs, Brice Ikby Binissia and Halina Sucheka, individually and on behalf of a class of similarly situated persons, by their attorneys, for their Memorandum in Support of their Amended Motion for Conditional Collective Action Certification (Doc. No. 106), state:

**I. Introduction**

Defendants (hereafter collectively referred to as "ABM") employ janitors at building locations throughout its Northeast and North Central regions. Since February 2010, these janitors reported their time under two different methods: (i) an electronic time keeping system whereby the janitors' actual clock-in and clock-out times were recorded and stored on a data base, and (ii) a punch card system where janitors' actual clock-in and out times were recorded on time cards, then later entered into a payroll data base. Under both methods, ABM would round the janitors' actual clock-in and clock-out times. Under the electronic method, ABM's

1

timekeeping software was programmed to do this automatically. On the time cards, ABM would only report rounded times (*e.g.,* the employees' scheduled hours) regardless of the actual time clock stamps. Under both methods, the janitors are only paid for their rounded time, and not actual time worked.

Plaintiffs allege that both methods of timekeeping are identical in that they violate the FLSA in the same manner. Under ABM's policy, janitors are not compensated for their pre-shift compensable activities. Instead, the time performing this work is rounded away under ABM's practice (regardless of the method). When this rounding occurs during weeks in which janitors only get paid forty hours of regular pay (which are numerous), the eliminated time constitutes lost overtime pay under the FLSA.

The Plaintiffs are seeking an order for conditional certification under the FLSA, § 216(b), from this Court to send notice to the following class of employees:[1]

> All janitors (or employees performing similar duties) employed by Defendants from February 14, 2010 to the present who: (i) are, or were, employed in Defendants' North Central or Northeast regions; (ii) had clock-in and clock-out times recorded electronically or with a punch card on a time clock; and (iii) for one or more work weeks was paid forty hours at their regular rate of pay.

Plaintiffs present more than the required "modest factual showing" that this proposed class of employees is similarly situated. The proposed class members share in the same "factual nexus" binding their claims together. ABM's rounding practice applies to each and every one of them, and this practice denies overtime pay for pre-shift compensable work.

In support of this motion, ABM admits that they utilized an electronic time keeping system that rounded away janitors' actual clock-in and clock-out times. Not surprisingly, this admission is supported by a sample of ABM's data provided in the limited discovery to date.

---

[1] The Plaintiffs have narrowed the class sought in their Second Amended Complaint by seeking conditional certification of janitors who work in the North Central and Northeast regions, and not the South or West regions.

The punch card sample presented also reflects ABM disregarding the actual work times and simply writing in the "rounded" scheduled hours. The electronic data shows ABM's software automatically rounding away janitors' time. This demonstrates a uniformity among the proposed class of all being subject to the same practice that allegedly violates the FSLA. Therefore, Plaintiffs easily meet the "modest factual" requirement for conditional certification under the FLSA.

Whether ABM's rounding practice equally favors the employer and employee is a question of merit. Therefore, this analysis is not part of the notice stage process. Regardless, ABM admits that the Northeast region's electronic rounding practice is not equal on its face. Also, the electronic data samples from the Northeast and North Central regions clearly demonstrate that ABM is the one to benefit over time. The same can be said for the time clock punch cards produced.

Also, whether compensable activities were performed during the rounded away time is a question that goes to the underlying merits of the claim, and in turn, not appropriate at the notice stage. Regardless, Plaintiffs present 94 declarations from janitors working at 40 different locations, and two declarations from former ABM supervisors. All of these declarants testify that janitors began performing compensable pre-shift work once they clocked in (*i.e.,* the time that was rounded away under ABM's admitted practice). This testimony is further supported by the plaintiffs who have been deposed by Defendants. ABM's written policy also states that employees must be ready to perform work at the time they clock-in. Finally, ABM has recently remedied their illegal practice by eliminating rounding, and now claims to pay all its janitors to the minute in compliance with the FLSA (*e.g.,* from when they clock-in).

For the reasons discussed herein, this Court should find that Plaintiffs have met the "lenient" standard required under § 216(b). More than a "modest factual showing" has been presented demonstrating that the proposed class is "similarly situated." All the class members share the same "factual nexus" of being subject to ABM's admitted rounding practice. The allegations in the Second Amended Complaint are substantiated by admissions, testimony, data analysis, and written policies. Therefore, this Court should grant conditional certification and permit notice to be sent.

## I. Statement of Facts

### i. Defendants' Corporate Structure and Janitorial Services

ABM Industries, Inc. is a publicly traded company with over 108,500 employees in the United States and various international locations. (Ex. 1) It operates wholly owned subsidiaries that provide janitorial, parking and security services. (*Id*.). ABM Janitorial Services, Inc. is a wholly owned subsidiary of ABM Industries, Inc. (Ex. 2, Ans. Sec. Am. Compl., ¶18) ABM Janitorial Services, Inc. in turn operates regional, wholly owned subsidiary entities that provide janitorial services across the country. (Ex. 2, Ans. Sec. Am. Compl., ¶¶18, 19)("Defendants admit that ABM Janitorial Services, Inc., through its subsidiary companies, provided janitorial services to business and entities between February 15, 2010 through to the present.") ABM Janitorial Services, Inc. is divided into four regions: North Central, Northeast, South and West. (Ex. 3, Supp. Ans. to Interr. No. 2) ABM Janitorial Services North Central, Inc. and ABM Janitorial Services Northeast, Inc. are two of the four regional subsidiaries and cover the geographical locations at issue in this Motion. (Ex. 2, Ans. Sec. Am. Compl., ¶¶19; 21-25)

Based on the following facts, Plaintiffs allege that ABM Industries, Inc. and ABM Janitorial Services, Inc. are either "employers" or "joint employers" of Plaintiffs and the putative class under the FLSA:

- Defendants' wage and hour policies, including those regarding overtime pay, are established by ABM Industries, Inc. and jointly implemented by ABM Janitorial Services, Inc. and its regional subsidiaries, including ABM Janitorial Services North Central, Inc. and ABM Janitorial Services Northeast, Inc. (Ex. 4, Terazi Dep., pg. 106:19-22; 157:20-25; 158:1-19; Ex. 5, Suerth Dep., pg. 27: 17-24; 31:15-24; 32:1-2; 40:22-24; 41:1-16; 145:19-24; 146:1-19; 147:1-22; Ex. 6, 2177-2189);

- ABM Industries, Inc. and ABM Janitorial Services, Inc. had "control of setting up" the regional subsidiaries' "Rounding Rules" that were applied to the janitors' actual punch times, as set forth below in Section II (Ex. 4 at 157:20-25; 158:1-19; Ex. 5 at 31:15-24; 32:1-2; 40:22-24; 41:1-16);

- Beginning on September 29, 2012, Defendants changed their nationwide payroll policy by paying janitors to the minute rather than to the scheduled shift time (or in rounded increments); ABM Industries, Inc. is "in charge" of the policy change and its roll out (Ex. 4 at 43:7-25; 44:1-10; Ex. 5 at 60:20-22; 61:1-2); and

- ABM Industries, Inc. provides company-wide wage and hour instructions to the regional subsidiaries, including a power point presentation stating that "Rounding to nearest 15 minutes is permitted by law and ABM policy." (Ex. 6 at ABM 2107; *see also* Ex. 4 at 106:19-22; Ex. 5 at 27: 17-24).[2]

As set forth in detail below, the North Central and Northeast regions have primarily used the two timekeeping methods at issue, which are (i) electronic methods (*e.g.*, biometric clocks, such as fingerprint scanners) and (ii) "old fashioned" punch cards. The west and south regions, on the other hand, appear to have used handwritten timesheets as a timekeeping method, which is not at issue in this Motion.

---

[2] Courts have recognized that the terms "employer" and "employee" are defined broadly in order to accomplish the remedial purposes of the FLSA. *See, e.g.*, *Sec'y of Labor, U.S. Dep't of Labor* v. *Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987). Plaintiffs include this information at this early stage out of an abundance of caution. However, this is a merits-based issue which is reserved for the second stage of the case.

## II.    Defendants' Rounding Practice

### i.    *Plaintiff Brice Ikby Binissia*

Plaintiff Binissia is a Congolese born immigrant who worked as a janitor from approximately June 2008 until March 13, 2012. (Ex. 7, pg. 18:14-17; 100: 5-13). He regularly worked the 5:00 p.m. to 1:00 a.m. shift and his job duties were typical janitorial duties. (*Id.* at 40: 23-23; 41:1-3; 44:12-15; 50: 5-19) During his typical shift, Mr. Binissia cleaned 13 floors at high rises on LaSalle Street in Chicago. (*Id.* at 11:2-21) He vacuumed the offices on the 13 floors, removed waste, dusted, and cleaned 26 male and female restrooms, with each restroom having as many as seven compartments, or stalls. (*Id.* at 11:2-21; 12:12-22; 43:10-24; 65:19-24; 66:1-8) Mr. Binissia began working as soon as he punched in at the start of his shift; "if I punched in I was always doing something." (*Id.* at 41:10-13; 43:1-22; 44:12-15; 75:5-17; 78:1-6; 109:12-13)

Mr. Binissia used punch cards from May 14, 2011 until approximately March 13, 2012. (Ex. 8) For janitors who used punch cards, their supervisors rounded the actual punch times on the punch cards to conform with scheduled shift times. (Ex. 9, Decl. of former supervisor Marlin Hunt, ¶ 10-11; Ex. 10, Decl. of former supervisor Antoni Chmenia, ¶ 9-10) This is typically accomplished by either writing an "8" next to the daily punch times on the punch card and/or through the supervisors' preparation of excel-type spreadsheets which reflect the scheduled hours of the janitors, rather than the actual punch times. (*Id.*) These rounded spreadsheets are submitted to the regional payroll processing centers. (*Id.*)

The punch cards of Plaintiff Binissia were rounded from his actual punch-in time to a rounded time to his detriment. For example, the following chart is taken from an actual punch

card in September 2011 and shows his actual punch in time and the rounded time (Defendants used the rounded time to calculate payroll):

| Date | Time In on Punch Card | Time Out on Punch Card | Actual Hours Worked | Rounded Hours |
|------|----------------------|------------------------|---------------------|---------------|
| 9/19/11 | 4:35 p.m. | 12:49 a.m. | 8 hrs 14 min | 8 |
| 9/20/11 | 4:35 p.m. | 12:53 a.m. | 8 hrs 18 min | 8 |
| 9/21/11 | 4:49 p.m. | 12:54 a.m. | 8 hrs 5 min | 8 |
| 9/22/11 | 4:44 p.m. | 12:49 a.m. | 8 hrs 5 min | 8 |
| 9/23/11 | 4:43 p.m. | 12:57 a.m. | 8 hrs 14 min | 8 |
| 9/26/11 | 4:32 p.m. | 1:02 a.m. | 8 hrs 30 min | 8 |
| 9/27/11 | 4:50 p.m. | 12:54 a.m. | 8 hrs 4 min | 8 |
| 9/28/11 | 4:53 p.m. | 12:48 a.m. | 7 hrs 55 min | 8 |
| 9/29/11 | 4:41 p.m. | 12:53 a.m. | 8 hrs 12 min | 8 |
| 9/30/11 | 4:47 p.m. | 12:59 a.m. | 8 hrs 12 min | 8 |

**Total:**     81 hrs 49 min     80 hrs
(actual)     (rounded)

(Ex. 8)

All of Mr. Binissia's punch cards show rounding, including many with the handwritten number "8" next to the actual punch times. (Ex. 8) The punch-in time exceeds the rounded time. A chart showing the difference is attached hereto as Exhibit 11.

### ii. *Plaintiff Halina Sucheka*

Plaintiff Halina Sucheka is a Polish born immigrant who has worked for ABM as a janitor at 10 S. LaSalle Street in Chicago during the entire statutory period. She performs typical janitorial duties of collecting garbage, vacuuming, dusting and cleaning offices, office kitchens, and bathrooms.[3] She used electronic timekeeping methods since at least February 15, 2010. (Ex. 12) She testified that when she punched in, she started to perform her work. The chart below is based on her Punch Summaries, all of which indicate her time was rounded off the

---

[3] Her deposition occurred on June 15, 2013, and her transcript is unavailable as of the date of filing this brief, but it will be attached to Plaintiffs' reply brief.

payroll count and ultimately, her paycheck. Even though there may not be time shaving or rounding every day, the rounding is similar to this during the majority of her tenure, such as the following in 2010 and 2011:

| Date | Actual Time-In | Rounded Time-In | Actual Time Out | Rounded Time Out | Actual Total Hours | Rounded Total Hours |
|------|----------------|-----------------|-----------------|------------------|--------------------|---------------------|
| 3/22/10 | 16:53 | 17:00 | 1:02 | 1:00 | 8:09 | 8.00 |
| 3/23/10 | 16:52 | 17:00 | 1:01 | 1:00 | 8:09 | 8.00 |
| 3/24/10 | 16:53 | 17:00 | 1:01 | 1:00 | 8:08 | 8.00 |
| 3/25/10 | 16:52 | 17:00 | 1:01 | 1:00 | 8:09 | 8.00 |
| 3/26/10 | 16:53 | 17:00 | 1:01 | 1:00 | 8:08 | 8.00 |
| 3/29/10 | 16:53 | 17:00 | 1:01 | 1:00 | 8:08 | 8.00 |
| 3/30/10 | 16:51 | 17:00 | 1:01 | 1:00 | 8:10 | 8.00 |
| 3/31/10 | 16:52 | 17:00 | 1:01 | 1:00 | 8:09 | 8.00 |
| 4/1/10 | 16:52 | 17:00 | 1:01 | 1:00 | 8:09 | 8.00 |
| 4/2/10 | 16:50 | 17:00 | 1:01 | 1:00 | 8:11 | 8.00 |

**Total:**    81 hrs 30 min    80 hrs
(actual)    (rounded)

| Date | Actual Time-In | Rounded Time-In | Actual Time Out | Rounded Time Out | Actual Total Hours | Rounded Total Hours |
|------|----------------|-----------------|-----------------|------------------|--------------------|---------------------|
| 9/19/11 | 16:51 | 17:00 | 1:01 | 1:00 | 8:10 | 8.00 |
| 9/20/11 | 16:30 | 17:00 | 1:01 | 1:00 | 8:31 | 8.00 |
| 9/21/11 | 16:52 | 17:00 | 1:01 | 1:00 | 8:09 | 8.00 |
| 9/22/11 | 16:52 | 17:00 | 1:01 | 1:00 | 8:08 | 8.00 |
| 9/23/11 | 16:52 | 17:00 | 1:01 | 1:00 | 8:09 | 8.00 |
| 9/26/11 | 16:51 | 17:00 | 1:01 | 1:00 | 8:10 | 8.00 |
| 9/27/11 | 16:30 | 17:00 | 1:01 | 1:00 | 8:31 | 8.00 |
| 9/28/11 | 16:53 | 17:00 | 1:02 | 1:00 | 8:09 | 8.00 |
| 9/29/11 | 16:53 | 17:00 | 1:01 | 1:00 | 8:08 | 8.00 |
| 9/30/11 | 16:52 | 17:00 | 1:01 | 1:00 | 8:09 | 8.00 |

**Total:**    82 hrs 14 min    80 hrs
(actual)    (rounded)

(Ex. 12)

iii.    *Defendants' Supplemental Answers to Interrogatories*

In Defendants' supplemental answers to interrogatories, they admit that the rounding practice applies to thousands of janitors across the country:

> "[F]or those janitors whose time and attendance have been kept through such methods as biometric timeclocks or IVR (interactive voice response), there have been 'rounding rule' selections made by the Epay system during the statute of limitations period that appear to have essentially paid janitors according to their scheduled shift time and state further that as ABM Janitorial Services – North Central, Inc. has been transitioning to Workforce Management…, different janitors at different locations have at different times during the statute of limitations period transitioned to being paid to the punch/minute – i.e., their pay has been calculated based on the actual punch-in and punch-out times with no 'rounding rule' applied."

(Ex. 3, Supp. Ans. No. 1)

Epay is the name of the software application in Defendants' timekeeping system where "Rounding Rules" are applied to the actual punch times from the time clocks in the buildings and locations where the janitors work. (Ex. 3 at 42:6-12; 70:15-25; 71:1-19) Rounding Rules are applied to janitors' punch times and change the actual punch times to rounded times. (*Id.*)

Defendants admit that "in the Northeast region, the time for janitors on electronic timekeeping was rounded up to about the end of September, 2012, at which time rounding ceased and these janitors were paid to the minute." (Ex. 13, Supp. Ans. No. 7) Lastly, Defendants admit that after the *Las v. ABM* settlement[4], Defendants began paying all of its janitors according to their punch time:

> "Since about [September] 2012, the ABM Janitorial Services subsidiaries have been transitioning towards paying all janitors according to their punch in and punch out times with no Epay setting selected to round to any increment of time".

(Ex. 3, Supp. Ans. No. 7)

### iv.    *Rule 30(b)(6) Testimony for the North Central and Northeast Regions*

Plaintiffs issued a Rule 30(b)(6) deposition notice for a corporate representative knowledgeable about the "Rounding Rules" that were applied to janitors who used electronic

---

[4] The parties disagree as to whether the *Las v. ABM case,* No. 11 cv 5644, N.D. Ill. 2011 (J. Nordberg), caused or contributed to the policy change.

timekeeping methods. Plaintiffs also issued a Rule 30(b)(6) deposition notice regarding Defendants' post-*Las v. ABM* nationwide policy change in the fourth quarter of 2012 and 2013 when Defendants began paying its janitors to the minute/punch. In response to these two Rule 30(b)(6) notices, Defendants designated the controller for each of its four regions to testify about the two topics. Plaintiffs took the deposition of the regional controller for the Northeast region and the North Central region.

Alex Tarazi is the Vice President and regional controller for ABM's northeast region. (Ex. 4 at 5:12-25) This region includes Massachusetts, New York, Connecticut, New Jersey, Pennsylvania, Delaware, District of Columbia, Maryland, Maine, New Hampshire, Rhode Island, Vermont and Virginia. (*Id.* at 6:3-23) There are approximately 17,000 janitors currently working in the northeast region. (*Id.* at 74:2-6) Mr. Tarazi admits that up to September 2012, in the northeast region, ABM would round janitors' start and stop times. (*Id.* at 17:20 -18:20; 33:19-34:5) In this time frame, all the janitors' time stamps in the northeast region were recorded biometrically or through IVR (phone-in system). (*Id.* at 27:5-28:15) All these janitors had their time stamps rounded at all locations in this region. (*Id.* at 34:5-8) Beginning with the pay period of September 29, 2012, ABM started paying these janitors for their actual clock-in and clock-out times. (*Id.* at 39:9-25)

The janitors' time entries are processed as follows. An employee using a biometric time keeping system would clock in on a "WalTer" time clock. (*Id.* at 33:19-34:9) The time entry from this clock is pulled up to a server which is where the ePay program resides. (*Id.* at 46:15-48:13) When the punch times arrive in the ePay software application, they are subjected to its Rounding Rules, which are applied to the actual punch times and rounds them accordingly. (*Id.* at 41:7-42:12) The area managers review and approve the time, and then payroll uploads the

data to ABM's J.D. Edwards system for payroll calculations for the employees. (*Id*. at 46:23-49:15)

When the rounding practices were in place, the janitors' pay was determined by the rounded time and not the actual time. (*Id*. at 72:14-18) When changing the system to pay-to-the-minute for janitors, all it took was one adjustment (or "click of the button") in ABM's ePay system to remove the rounding practice. (*Id*. at 39:23-40:12; 42:6-12; 102:23-103:2) Regarding the northeast region, Mr. Tarazi testified that there was 15 minute rounding before the beginning of the shift with a 5 minute grace period after the beginning of the shift. (*Id*. at 78:7-21) He described this application in the following example:

> That the way I understood it, is that you could come to work at 3:45 -- I mean, punch at 3:45 and your scheduled shift starts at 4:00. So, if you punched anywhere -- say, you punched at 3:50, your pay will start at 4 o'clock. If you came -- if you came to work and punched a 4:05, then it will put you back to 4 o'clock.

(*Id*. at 79:9-25) Under this scenario, if the employee punched in at 4:06, it would round back to a start time of 4:01. (*Id*. at 87:2-19) On its very face, it is clear that this rounding system does not apply equally to the employer and employee. Instead, ABM clearly benefits more under this rounding scheme by obtaining up to 15 minutes of pre-shift compensable time for free, while the employee can only benefit up to 5 minutes for not doing any work.[5] This rounding rule applied to all the pay groups located in the northeast region. (*Id*. at 203:21-206:14)

Ray Suerth is the Vice President and regional controller for ABM North Central, Inc. (Ex. 5 at 6:20-22) This region includes Michigan, Ohio, Kentucky, Indiana, Illinois, Wisconsin, Minnesota, Iowa, Missouri, Kansas, Nebraska, South Dakota and North Dakota. (*Id*. at 9:10-23) Defendants designated Mr. Suerth to testify in response to the Rule 30(b)(6) notices. He testified

---

[5] However, stated herein, the employee benefiting scenario does not exist in practice because ABM punishes and ultimately terminates janitors for coming to work late.

that there are approximately 13,000 current janitors in the North Central region.  (*Id.* at 9:24;10:1-2)  He stated that ABM rounded the janitors' electronic punch times at various locations, including Chicago, IL; the Illinois Tollways; Columbus, Ohio; Louisville, KY; Milwaukee, WI; and the Minneapolis, MN airport.  (*Id.* at 51:5-24; 52:1-6; 56:22-24; 57:1-23; 78:13-15; 100:6-21; 102:10-23)  He testified that these locations used a 15 minute rounding rule (with the exception of the Minneapolis airport, which previously used a 13 minute rounding rule). (*Id.*)

Beginning in approximately the Summer of 2012, Mr. Suerth claims that ABM started rolling out its "Pay-By-The-Minute" policy across the North Central region.  (*Id.* at 21:10-16; sheet)  However, in most locations in the North Central region that use electronic timekeeping methods, "Pay-By-The-Minute" was not actually implemented until April 2013 or is currently being implemented during the Summer of 2013.  (*Id.* at 23:1-18; 72:5-10; 75:13-15)

Mr. Suerth also testified that all janitors who used electronic timekeeping methods in the North Central region had the same rounding rules in 2010, 2011 and 2012.  (*Id.* at 45:8-12; 50: 7-22; 55:2-5; 119:8-13; 22-24; 120:1-3, 8-11; 128:19-24; 129:2; 169:15-19)  He testified that under the 15 minute Rounding Rule, "[i]t was basically at the 7 and half minute mark that you would round up or round down."  (*Id.* at 51:5-24; 52: 1-6)  He testified that, at least in theory, this meant that if a janitor punched in at 4:50 p.m. for a shift starting at 5:00 p.m., then the janitor's punch time would be rounded to 4:45 p.m., while a janitor who punched in at, for example, 4:54 p.m. would have their time rounded to 5:00 p.m.  (*Id.* at 205:13-24; 209:6-24; 210:7-18)

However, when plaintiffs showed Punch Summaries to Mr. Suerth from class representative Halina Suchecka and punch cards from Illinois janitor Milanka Lucic, the rounded time reported would round the actual punch-in times to the beginning of their respective

12

scheduled shifts, regardless of what 15 minute interval was closest in time (*i.e.,* this did not comport with his prior testimony on ABM's rounding because this was more detrimental to the employee).  (*Id.* at 211:5-215:19; 235:6-239:10)   Many of the entries clearly showed actual punch times 8 or more minutes before the start of the scheduled shift, which should have been rounded to 4:45 p.m. according to Mr. Suerth's knowledge and testimony, but clearly were rounded instead to the start of the scheduled shift (5 p.m.).  (*Id.*)   Mr. Suerth was unable to explain these discrepancies.  (*Id.*)

> ### v.  *Exemplary Punch Cards and Punch Summaries*

A review of the Punch Summaries and punch cards shows rounding of janitors' punch times during the statute of limitations.  For example, Defendants produced i) punch cards and Punch Summaries for 20 janitors in Illinois; ii) Punch Summaries for five janitors in each of the states of Ohio, Kentucky, Connecticut, Massachusetts, Maryland, New York, Pennsylvania and Virginia; and iii) several weeks' worth of punch card records from Pennsylvania, Missouri and Kansas.

The punch card records produced were incomplete and heavily redacted,[6] precluding plaintiffs from discerning basic information from them such as: (1) the total number of janitors covered by the records, and (2) any identifying information to allow a comparison of the time cards with the payroll registers.  But, on their face, the punch cards do reflect the handwritten rounding as described by supervisors Hunt and Chmenia in their declarations.  (Exs. 9, 10)

For example, we can look at nine punch cards from Defendants' production for locations in Missouri and Kansas.  (Ex. 14)   On these punch cards, janitors are generally logging two different shifts (7 am to 3:30 pm and 3:30 pm to 12:00 am).  (*Id*.)   The janitors are also punching

---

[6] The punch card production for Kansas and Missouri also appears to contain repetitively produced records, but the redactions make it difficult to confirm.  Plaintiffs asked Defendants to identify the repetitive production, however, as of the filing of this brief, no response or clarification has been given.

in and out for their 30 minute lunch breaks, which are unpaid because a handwritten "8" appears next to many of the 8.5 hour shift punches.  (*Id*.)

        In the limited discovery to date, ABM presented a very small sampling of electronic time keeping data for janitors in a selection of states (a/k/a "punch summaries").  This included a handful of janitor (*e.g.,* between 3 and 9 from each state) sampled from eight different states (OH, KY, CT, MA, MD, NY, PA and VA).[7]  (Dr. Madansky Report, Ex. 15, pg. 1)  The Plaintiffs retained Dr. Albert Madansky to review the two data files representing this limited janitor sample.  The purpose was to determine whether ABM had a rounding mechanism at the location where these employees worked, and if so, could its impact be determined.  (*Id*. at 1)  ABM's data production was flawed.  Dr. Madansky reported numerous data production issues where several inconsistent entries occurred on a single day.  (*Id*. at 2-3, 6)  However, despite the flawed data, Dr. Madansky was able to observe a pattern in ABM's rounding.  His review of the data demonstrated that ABM rounded at each of the locations where these employees worked.  (*Id*. at 1)  The instances he observed reflected the rounding to occur to the nearest quarter hour.  This is not to say that this type of rounding would always occur with equal frequency in benefiting  the employer and employee.  (*Id*. at 1)  He was also able to observe that for some employees, rounding occurred in the records, and then this ceased whereby the employee began being paid by the minute.  (*Id*. at 2)  Dr. Madansky concluded that the data demonstrates rounding exists in ABM's time keeping system, and that a further study of an entire clean data production for the employees in any region at issue would most likely  determine whether ABM was benefiting from this rounding over time (until such rounding ceased).  (*Id*. at 7-8)  Indications in the existing data demonstrate that such rounding could be to the detriment of the employees over time.  (*Id*. at 7)  Such a data production would permit Dr. Madansky to identify

---

[7] Note: these eight different states all fall within the North Central and Northeast regions.

the employees subject to unfair rounding, and along with their related pay data, calculate their lost overtime pay. (*Id.* at 1)

### vi. U.S. DOL Investigation

Plaintiff discovered via a FOIA request that in 2011 the U.S. DOL found improper rounding on janitors' manual punch cards where supervisors at the Philadelphia International Airport were writing the number "8", the scheduled shift hours, over the actual punch times, just like the instant case for punch card janitors and just like in *Las v. ABM*. (Ex. 16; the Philadelphia International Airport janitors' punch cards are attached as Ex. 17, while examples of Illinois janitors' punch cards are attached as Ex. 18) The rounded hours were used for calculating payroll, not the actual punch times, to the janitors' detriment.

Because of improper rounding on punch cards where supervisors were instructed to write "8" over the punch times and stamps on the punch cards per Defendants' policy and practice, identical to that described above, the U.S. DOL investigation resulted in 21 janitors at the Philadelphia International Airport receiving an average back wage payment of $912 each:

> "Section violations – not all hours worked were counted due to inconsistent rounding practice, resulting incorrect tabulation of time cards. 21 employees due $19167.11. ER ATC and ATP BW by 8/13/2011. Large firm with multiple prior investigations. First investigation for this branch. Houston MODO directed CMPs be assessed."

(Ex. 16)

### vii. Declarations of 94 Janitors Who Worked at 40 Locations

Attached hereto as Exhibit 19 are the Declarations of 94 janitors. These janitors worked out of the two main branches in Illinois: Chicago and Lisle, which together currently employ over 5,000 janitors. These 94 individuals state that as soon as they punched in each day, they would begin their work duties, even though they would punch in before the start of their

scheduled shift time. (Ex. 19) After punching in each day, they would collect their supplies, go to their assigned work areas and/or begin their cleaning duties. (*Id*.) Defendants admit such work and tasks are compensable. (Ex. 20, at ABM T 148; Ex. 21 at ABM 2645; *see also* Ex. 22, pg. 261: 6-21; 262:22-24, deposition of ABM's Rule 30(b)(6) witness from *Las v. ABM*)

These 94 janitors worked at approximately 40 different locations in Chicago and the Lisle area. (Ex. 19)

### viii. Defendants' Janitor Policy Requires them to Work Once they Punch-In:

ABM's policies and "Work Rules" require janitors to work once they punch in. For example, the June 28, 2012 memorandum to "Midwest Region Branch Operations" from the Executive Vice President Dan Minning states in pertinent part:

> "The following policies and procedures are still in effect and mandatory for all employees, managers, and supervisors regardless of when your location transitions to Workforce Management:
>
> · Do not allow employees to perform <u>any work</u> before punching in…Employees must perform all beginning-of-shift activities (such as gathering supplies and equipment, organizing the janitor's cart or closet, refilling cleaning supplies) after the employee punches in.
>
> · Instruct employees that they must perform all beginning-of-shift activities *<u>after</u>* they punch in."

(Ex. 20)(emphasis in original)

Additionally, ABM's "Work Rules" for janitors state: "You must sign an attendance sheet or punch a time card upon beginning or ending your shift, unless otherwise instructed." (Ex. 28) The Vice President and Director of Human Resources for the North Central regional testified that under ABM's punctuality and tardiness policies, if a janitor is late, then s/he will be subject to disciplinary action up to and including termination. (Ex. 23, pg. 123:23-24; *see also* Ex. 24, excerpt from ABM's Employee Policy Handbook, "When an employee is tardy or

absent, the employee's assigned work must be performed by others. Poor attendance and/or excessive tardiness will not be tolerated and may lead to disciplinary action, up to and including termination of employment.")

### ix.  *Defendants' Recent Policy Change*

Under Defendants' recent company-wide policy change, they now pay the putative class of janitors to the actual punch minute, or at least for the janitors who use electronic timekeeping methods. (Ex. 25)  This policy change occurred after parties reached a settlement in *Las v. ABM*. The Pay-By-The-Minute policy became effective approximately on September 15, 2012, while it continues to be rolled out at the branches in the North Central region. (Ex. 26; Ex. 4 at 43:7-25; 44:1-10; Ex. 5 at 60:20-22; 61:1-2)  Under the Pay-By-The-Minute policy, "Effective September 15th [2012] we will begin paying all hourly Non Exempt employees by the minute. This means employee will be paid for each minute they work." (Ex. 26)

## III.  <u>Argument</u>

### A.  **The Act Expressly Provides for Representative Actions.**

Section 216(b) of the FLSA permits a plaintiff to file a collective action, on behalf of himself or herself and other employees similarly situated, to recover unpaid overtime wages and liquidated damages from employers who violate section 7 of the FLSA. 29 U.S.C. § 216(b).  A prospective member of the collective action may "opt-in" by filing a written consent in the court where the action is brought.  A person who does not opt-in is not part of the collective action and is not bound by the court's decision. *Allen v. Marshall Field & Co*., 93 F.R.D. 438, 441 (N.D.Ill. 1982).  In *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 170-71 (1989), the Supreme Court explained that the purpose of the collective action device is to allow "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources," and that "[t]he judicial

system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged … activity." A district court has the authority to regulate notice of a collective action to similarly-situated persons. *Woods v. New York Life Ins.*, 686 F.2d 578, 582 (7th Cir. 1982).

While § 216(b) does not specify a procedure for providing notice to other prospective members of the collective action, district courts are afforded discretion to sensibly shape the notice process. *See Hoffman-LaRoche*, 493 U.S. at 169 (interpreting opt-in provision in ADEA that incorporates Section 16(b)). In reality, the Seventh Circuit has found that a plaintiff in a FLSA collective action claim is not required to seek leave of court to send notice and may do so on their own. *Garcia v. Salamanca Group, Ltd.,* 2008 WL 818532, at *2 (N.D.Ill. March 24, 2008) (citing *Heitmann v. City of Chicago*, 2004 WL 1718420 (N.D.Ill. July 30, 2004, and *Woods*, 686 F.2d at 580). However, courts in the Northern District of Illinois have regularly exercised discretionary authority over the notice process. *Id.* (citing *Gambo v. Lucent Techs, Inc.*, 2005 WL 3542485, at *3 (N.D.Ill. Dec. 22, 2005)). The Seventh Circuit has not provided any guidance on how a district court should exercise its discretion in the notice process. *Id.* But, several courts of appeal have endorsed a two-step approach regarding class certification under §216(b) of the FLSA. *See Cameron-Grant v. Maxim Healthcare Servs., Inc.,* 347 F.3d 1240, 1243 n. 2 (11th Cir. 2003); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). A number of courts in the Northern District of Illinois have adopted this approach. They use a two-step method to determine whether a plaintiff is "similarly situated" to the prospective class members. *See Betancourt v. Maxim Healthcare Services, Inc.*, No. 10 cv 4763, 2011 WL 1548964, at *4 (N.D. Ill. April 21, 2011)(J. Gilbert); *Petersen v. Marsh USA, Inc.*, No. 10 cv 1506, 2010 WL 5423734, at *5 (N.D. Ill. Dec. 23, 2010)(J. Kennelly); *Howard v. Securitas*, No.

08 cv 2746, 630 F. Supp. 2d 905 2009 WL 140126, at *5 (N.D. Ill. Jan. 20, 2009)(J. Gottschall)(adopting two-stage FLSA process, noting "[T]he court looks for no more than a 'minimal showing' of similarity."); *Shiner v. Select Comfort Corp*., 2009 WL 4884166, at *2, (N.D. Ill. Dec. 9, 2009); *Russell v. Illinois Bell Tel. Co*., 575 F. Supp.2d 930, 933 (N.D. Ill. 2008); *Olmsted v. Residential Plus Mortgage Corp.*, No. 08 cv 142, 2008 WL 5157973, at *4 (N.D. Ill. Dec. 9, 2008)(J. Leinenweber); *Jirak,* 566 F. Supp. 2d at 847 (J. Castillo)(collecting cases); *Bastian v. Apartment Invest. and Mgmt. Co.*, No. 07 cv 2069 (N.D. Ill. Sept. 17, 2007)(J. Gettleman).

B.    **Under the Modest Factual Showing at this First Stage, Plaintiffs Have Demonstrated a Factual Nexus That Binds Potential Members of a Collective Action Together.**

The first step requires a plaintiff to "show there are similarly situated employees who are potential claimants." *Betancourt,* 2011 WL 1548964, at *4 (N.D. Ill. Apr. 21, 2011) (citing *Russell,* 575 F. Supp. 2d at 933). A plaintiff's burden at stage one is lenient, and is met with "a modest factual showing sufficient to demonstrate that [he] and potential class members were victims of a common policy or plan that violated the law." *Id*. (quoting *Witteman v. Wisconsin Bell Inc.,* 2010 WL 446033 (W.D. Wis. Feb. 2, 2010)). Thus, "a plaintiff need only demonstrate a factual nexus that binds potential members of a collective action together." *Ervin v. OS Rest. Serv., Inc*., 2009 WL 1904544, at *3 (N.D. Ill. July 1, 2009); rev'd in part on other grounds *Ervin v. OS Rest. Serv., Inc.,* 632 F.3d 971 (7th Cir. 2011). The "modest factual showing" requirement of the first step "is **not a stringent standard**. . ." *Gambo*, 2005 WL 3542485, at *4 (emphasis added) (citing *Garza v. Chicago Trans. Auth.*, 2001 WL 503036, at *2 (N.D.Ill. May 8, 2001)).

At the second step, "following the completion of the opt-in process and further discovery, the defendant may ask the Court to reevaluate the conditional certification to determine whether

there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Russell*, 575 F. Supp. 2d at 933 (quoting *Jirak v. Abbott Labs., Inc.,* 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008)).

### 1. The Similarly Situated Standard Under the First Step:

Plaintiffs have presented abundant evidence that janitors working in ABM's North Central and Northeast regions are similarly situated in that they are all subject to ABM's rounding practice. This is true throughout both regions and under both methods of timekeeping. The existence of this practice is verified by voluminous testimony, admissions by ABM's representatives, and ABM's data.

At the notice stage, courts determine whether plaintiff and potential opt-in plaintiffs are "similarly situated" based upon allegations in a complaint supported by affidavits. *Nehmelman v. Penn Nat'l Gaming, Inc.,* 822 F.Supp.2d 745, 750 (N.D. Ill. Sept. 29, 2011). To be similarly situated, each class member's situation need not be identical, but merely similar. *Gambo,* 2005 WL 3542485, at *5; *Riojas v. Seal Produce, Inc.*, 82. F.R.D. 613, 616 (S.D. Tex. 1979). A plaintiff can meet the threshold showing under the first stage if she makes a modest factual showing that she and other potential plaintiffs were victims of a common policy or plan that allegedly violated the FLSA. *Bontempo v. Metro Networks*, 2002 WL 1925911, at *1 (N.D. Ill. May 3, 2002).

This district has found that allegations in the complaint, supported with sworn testimony, are sufficient to meet the "modest factual showing" requirement for conditional certification. *See*, *Howard v. Securitas Security Services, USA Inc.*, 2009 WL 140126, at *6 (N.D.Ill. Jan. 20, 2009) (allegations in complaint plus seven sworn statements met modest factual showing requirement for conditional certification); *Garcia v. Salamanca Group, Ltd.,* 2008 WL 818532,

*2 (N.D.Ill. March 24, 2008) (one affidavit sufficient to meet modest factual showing requirement for conditional certification); *Gambo v. Lucent Techs, Inc.*, 2005 WL 3542485, at *1-3 (N.D.Ill. Dec. 22, 2005) (allegations in complaint supported by three affidavits sufficient to meet modest factual showing requirement for conditional certification); *Garza v. Chicago Trans. Auth.*, 2001 WL 503036, at *3 (N.D.Ill. May 8, 2001) (submitting some evidence outside the complaint was sufficient to meet modest factual showing requirement for conditional certification).  As discussed below, the Plaintiffs provide voluminous evidence beyond this requirement through testimony, admissions, documents, and data.

### 2.      *All Proposed Class Members are Subject to ABM's Illegal Rounding Practice:*

ABM's corporate representatives have admitted that janitors in both regions are subject to a "common policy or plan": ABM's rounding practice.  Plaintiffs are alleging that this class-wide practice violates the FLSA by denying janitors overtime pay for pre-shift work.  ABM's rounding practice is illegal under the FLSA for two reasons.  First, the federal regulations, 29 C.F.R. §785.46, require employers to record actual time worked by its employees unless doing so *is not practical under the payroll process*.  In such cases, it only allows increments of seconds or a few minutes to be disregarded by the employer.  And, this can only occur when a failure to count such time is justified by "industrial realities."[8]   In the matter at hand, Defendants' systems and policies round away the janitor's actual time worked.  This is true despite the fact that

---

[8] 29 C.F.R. §785.46.  In recording working time under the Act, insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded. The courts have held that such trifles are *de minimus*. (*Anderson* v. *Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946)) This rule applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities. An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him.

ABM's timekeeping methods (whether electronic or punch card) record actual minutes (*e.g.,* doing so is clearly "practical"). Not only is this practical under ABM's systems, it can be accomplished by a mere "push of the button." (Ex. 4 at 39:23-40:12; 42:6-12; 102:23-103:2). Indeed, this is further demonstrated by ABM now paying all the janitors to the minute. Also, there is no "industry reality" to justify paying janitorial employees for only their scheduled hours compared to actual time worked.

Second, when it comes to keeping time on automated systems, the federal regulations permit time clock rounding in increments of five minutes, and tenth or quarter hour increments *under certain circumstances*. 29 C.F.R. §785.48(b). In the end, such rounding is only permitted when it equally favors the employer and employee over time. *Id*.

> For enforcement purposes this practice of computing working time [rounding] will be accepted, **provided that** it is used in such a manner **that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked**.

*Id.* (emphasis added). Here, ABM does not round equally when eliminating the janitors' pre and post-shift work. Under its electronic time keeping system in the Northeast region, ABM's corporate representative has admitted that the policy does not round equally. Mr. Tarazi testified that an employee could have up to 15 minutes shaved off for pre-shift work. However, if the employee were to arrive late, they are only afforded a five minute grace period. Therefore, on its face, this rounding practice does not favor the employee and employer equally. Therefore, it violates the FLSA. Not surprisingly, this is demonstrated by Dr. Madansky's data analysis which reflects the rounding going to the employees' detriment the majority of times.

Regarding the North Central region, ABM's corporate representative testified that it had a 15 minute rounding policy that, allegedly on its face, applied equally to employee and employer (*e.g.,* if the employee arrives 7.5 minutes early, it rounds forward, and if employee

arrives 7.5 minutes late, it rounds back). Putting aside the fact that North Central data samples demonstrate ABM rounding away more than 8 minutes to the employees' detriment, equal rounding policies on their face are not legal *per se*. Simply having a rounding policy on paper that equally favors both employer and employee is not enough. The rounding must be equal in practice.

The court in *Austin v. Amazon.com, Inc.*, 2010 WL 1875811 (W.D.Wash. May 10, 2010), addressed this situation. In *Austin*, Amazon.com had a quarter hour time clock rounding policy that rounded both ways (*i.e.*, favored employers and employees equally on its face). *Id*. at *2. Yet, under its personnel policy, Amazon.com could punish employees for arriving late to work. *Id*. In filing a motion under Rule 12(b)(6), Amazon.com argued that plaintiff's rounding claim should be dismissed since, on its face, it equally favored both parties. *Id*. The court rejected this argument because 29 C.F.R. §785.48(b) does not contemplate a situation where the employee can only benefit from the rounding while being subject to discipline. *Id*. at *3. This only makes sense. How could a rounding scheme equally benefit an employee when that person is subject to discipline and termination as a cost of their benefit? Here, ABM has written policies prohibiting the janitors from benefiting under any alleged "equal" rounding policy. If late, janitors will be reprimanded and eventually terminated. This is the same unfair rounding practice that the *Austin* court rejected. Dr. Madansky's analysis of the data samples from reflects the impact of ABM's tardiness policy. The data demonstrates that the employer is the one benefiting from the allegedly "equal" rounding policy. So, in practice, the rounding is simply not equal.[9]

### 3. *Similar Cases Support Conditional Certification:*

---

[9] Also, Plaintiffs are not required to show that every instance of rounding favored only the employer. This contradicts the clear language of 29 C.F.R. §785.48(b) which requires rounding mechanisms to equally benefit employer and employees *over time*.

Regarding the matter at hand, a near identical case found that conditional certification under step one was warranted. In *Shockey v. Huhtamaki, Inc.*, 730 F. Supp. 2d 1298, 1301 (D. Kan. 2010), the plaintiffs alleged that defendants denied overtime pay under the FLSA based on a requirement that pre and post-shift work be performed off-the-clock. In particular, the defendants had a time clock system that rounded away the pre and post-shift work time. *Id*. The plaintiffs provided fourteen declarations from class members testifying that "they were regularly required to perform work before their shifts in amounts varying between five and twenty minutes, and they were required to work after their shifts in amounts varying between five and fifteen minutes." *Id*. 1302. The *Shockey* court found that the plaintiffs met the criteria for first stage notice by stating:

> At the notice stage, plaintiffs are not required to show that their job duties are identical. Plaintiffs have alleged they are all nonexempt, hourly employees subjected to the same unlawful policy, that is, they were required to perform pre- and post-shift work while defendant automatically rounded away any pre- and post-shift time expended at work. Plaintiffs allege this policy applied to all hourly, nonexempt employees who clocked-in to work before or after their shifts, regardless of the specific tasks they were required to perform during that time

*Id*. at 1303-04. Compared to *Shockey*, the Plaintiffs here have set forth the same allegations supported by more voluminous evidence.

The *Shockey* court also rejected defendants' argument that its Employee Handbook and collective bargaining agreements required employees to be paid for all time worked and for overtime as required by state and federal law. *Id*. at 1304. "[T]he presence of a written policy is not evidence that the policy was enforced, and certainly does not negate the possibility of an unwritten policy or general practice to the contrary." *Id*. It also did not matter that the rounding mechanisms varied in amount of time rounded away at some locations. "The Court is not persuaded that an employer can avoid conditional certification so long as each facility is alleged

to have violated the FLSA in varying increments." *Id.* Again, Plaintiffs here have demonstrated through ABM's admissions and data, that all its facilities in the North Central and Northeast regions have a rounding mechanism. Plaintiffs alleged that these mechanisms violate the FLSA.

Finally, the *Shockey* defendants argued that the rounding mechanisms in place are permitted under federal regulations. The court correctly found that "[a]lthough some rounding is generally permitted under federal regulations, it must be 'used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.'" *Id.* at 1305 (quoting 29 C.F.R. § 785.48(b)). As previously stated, the rounding mechanism in the Northeast region cannot do this fairly over time because it is rounds illegally on its face. Regarding the North Central region, the data reflects that rounding practice is not equal in practice. Even if this was disputed, it plays on impact on conditional certification.

Any analysis as to whether the rounding is applied equally over time is premature for Plaintiffs' motion before this Court. *Shockey* found that whether the rounding mechanism favored the employer or employee over time went to the underlying merits of the claim, and since the parties had not engaged in full discovery, it was not necessary to make this determination at the notice stage. *Id.* at 1305.

> [P]laintiffs have produced substantial allegations that more than one facility-in fact, most of defendant's facilities-engaged in a practice of rounding time away from employees before and after their shifts, thereby denying them compensation for pre- and post-shift work they were required to perform as part of their jobs. The Court "requires nothing more." Plaintiffs have shown they are similarly situated for purposes of conditional certification, and the Court finds that notice of this collective action should be sent to all putative class members at defendant's ten facilities and the parties should proceed to discovery on this claim.

*Id.* at 1307. Like *Shockey*, nowhere near complete discovery has occurred in this case. Plaintiffs have only received a miniscule sample of electronic pay data and punch cards. Yet, what has

been produced demonstrates illegal rounding. Simply put, the Plaintiffs have met the standards for conditional certification clearly spelled out in *Shockey*. And, that court is not alone.

In *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1236 (S.D. Ala. 2008), the plaintiffs alleged that employees were subject an illegal time clock rounding practice at defendant's facility. In addressing the same lenient first stage certification standards present in this Court, *Longcrier* found that:

> Plaintiffs have adequately and sufficiently demonstrated that other hourly employees at HL–A are similarly situated to them, in the sense that they are subject to common policies, practices or plans of HL–A that allegedly violate the FLSA. Accordingly, the Court concludes that Plaintiffs have made the requisite modest factual showing to satisfy this fairly lenient standard for purposes of conditional certification.

*Id*. *Longcrier* also rejected the routine arguments made by defendants in opposing conditional certification under these circumstances:

> If, as Plaintiffs have alleged and shown, they are all harmed by the same company pay policies, then it is of no consequence whether their job duties are similar, what kind of work they performed, why they worked off the clock, and the like. What matters is that they did work off the clock, that HL–A required or permitted them to do so, and that they were not paid statutory overtime that was otherwise due.

*Id.* at 1239.

In *Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 752 (N.D. Ill. 2011), the plaintiffs alleged that their employer required them to clock-in seven minutes early before their shifts, and that this time was rounded away under their time keeping system. Plaintiffs argued that, while the rounding policy on its face was neutral, in practice it rounded in favor of the employer over time. *Id.* at 754. The court agreed sufficient evidence was presented (in the form of declarations and a snap shot of time records) warranting plaintiffs' claim, and granted conditional certification. *Id.* at 758. Here, there is voluminous testimony establishing the

26

existence of ABM's rounding practice. The snap shot of electronic data and punch cards provided by ABM support the same.

In *Sloan v. Renzenberger, Inc.*, 2011 WL 1457368, at *2 (D. Kan. Apr. 15, 2011), plaintiffs alleged that defendant required them to be present and perform pre-shift work, and that its time keeping system rounded these minutes away. Defendants argued that each employee was subject to different supervisors who had different requirements regarding pre-shift work. *Id.* The court found these arguments to be premature, stating, "[a]t the notice stage of certification, a court need only consider the substantial allegations of the complaint along with supporting affidavits or declarations." *Id.* at *3. Whether the rounding mechanism on its face is neutral does not matter. *Id.* (citing *Braun v. Superior Indus. Int'l Inc.,* 2010 WL 3879498, at *5 (D.Kan. Sept. 28, 2010) (holding that the relevant question is not whether the Kronos system is lawful or unlawful, but whether plaintiffs are required to perform pre- and post-shift work without compensation)). Based on the allegations in the compliant, supported by declarations, the court granted conditional certification. *Id.*

### C. The Notice And Notice Protocol Proposed By Plaintiff Is Proper.

The Plaintiffs have discretion to prepare the notices as they see fit so long as the information is fair and accurate. Indeed, Seventh Circuit case law reveals that Plaintiffs are not necessarily required to seek the court's leave prior to sending notices to class members. *See*, *Garcia v. Salamanca Group, Ltd.,* 2008 WL 818532, *2 (N.D.Ill. March 24, 2008) (citing *Heitmann v. City of Chicago*, 2004 WL 1718420 (N.D.Ill. July 30, 2004)). The Seventh Circuit has even found that a district court cannot prohibit a plaintiff, *sua sponte*, from sending notice to class members. *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982). The *Woods*

opinion reveals the Seventh Circuit's intent pertaining to the deference plaintiffs should be afforded in this notice process and the content of the notice.

Regardless, the Northern District regularly exercises discretionary authority over the notice process. *Garcia*, 2008 WL 818532, at *2. For all practical purposes, the realities of adversarial litigation require the court's involvement. It would be a rare circumstance where a defendant voluntarily provides plaintiff the contact information for all class members without court order. If a plaintiff is successful under the first stage in the conditional certification process, the defendant is required to produce that information. However, when exercising this discretionary authority over the notice process, the district court should still adhere to the principles set forth in *Woods* and *Garcia*, *supra*. The Plaintiffs should have discretion regarding the notice's content so long as it is fair and accurate.

In *King v. ITT Continental Baking Co.*, 1986 WL 2628 (N.D.Ill. Feb. 18, 1986), while approving notice in a FLSA claim, the district court first noted that in general, "…**plaintiffs should be allowed to use the language of their choice in drafting the notice**," since after all, the notice is not from the Court, "…**but is instead a communication from the plaintiff and plaintiffs' counsel** to other prospective class members." *Id*. at *3. (emphasis added). The Plaintiffs in this case should be allowed to use the language of their choice because the notice is not a communication from the Defendants, or this Court, but is instead a communication from Plaintiffs and Plaintiffs' Counsel. *Id*. "[A]lthough the Court has both the power and the duty to ensure that the notice is fair and accurate, **that power should not be used** to alter plaintiffs' proposed notice unless such alteration is **necessary**." *Id*. (emphasis added). More so, courts should not permit alterations if such amendments would unreasonably "chill" participation in the action. *Id*.

The form of Plaintiffs' proposed Notice, attached as Exhibit 27, meets this "fair and accurate" standard. Numerous district court judges in the Northern District of Illinois have approved notice and consent forms containing substantially similar language as the forms proposed here. *See, e.g., Lacombe v. SMC Communications of Illinois,* Case No. 10 C 451 (Mason, J.), Dkt. No. 57; *Anzures v. EVA Investments, Inc.*, Case No. 09 C 4970 (Shadur, J), Dkt No. 31; *Shaukat v. Wireless 4 U,* Case No. 06 CV 4214 (St. Eve., J.), Dkt #45 (Exhibit G).

It may be necessary to use a variety of methods to ensure adequate Notice. *Adams v. Inter-Con Security Systems, Inc.,* 242 F.R.D. 530, 541 (N.D. Ca. April 6, 2007); *Romero,* 235 F.R.D. at 493. Issuing Notice via a variety of methods is particularly necessary where there is a risk that not all class members will receive the Notice to which they are entitled through U.S. Mail alone. *Romero,* 235 F.R.D. at 493. Here, the Plaintiffs are also requesting that this Court require the notice to be posted by the time clocks in the buildings where the proposed class members work. Courts in this district have found this to be acceptable in additional to mailing a notice. *See*, *Garcia*, *supra*, 2008 WL 818532, at *5 (Judge Lefkow ordered notice to be posted at all of defendant's business locations.); *see also, Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 493 (E.D. Cal. April 19, 2006) (Ordering notice to be posted at each of defendant's business locations, noting that defendant would face "only a small burden in being required to post the notice", and that "multiple district courts have approved this method of notice").

## IV. <u>Conclusion</u>

This FLSA was meant to protect people like janitors. For purposes of this motion, the janitors are similarly situated because they have similar job duties and were subject to ABM's rounding practice. Under the rounding practice at issue, janitors had their daily punch times rounded to their scheduled shift time, and they are only paid their rounded time, and not actual

time worked. Courts in the Seventh Circuit have consistently emphasized that this first stage analysis under Section 216(b) only requires a "modest factual showing" that the potential class members were subjected to a common policy or plan. "During this stage, courts use a 'lenient interpretation' of the term similarly situated.'" *Olmsted*, 2008 WL 5157973, at *4 (N.D. Ill. Dec. 9, 2008)(J. Leinenweber); *see also Betancourt v. Maxim Healthcare Services, Inc.*, No. 10 cv 4763, 2011 WL 1548964, at *4 (N.D. Ill. April 21, 2011)(J. Gilbert); *Bastian v. Apartment Invest. and Mgmt. Co.*, No. 07 cv 2069 (N.D. Ill. Sept. 17, 2007)(J. Gettleman); *Petersen v. Marsh USA, Inc.*, No. 10 cv 1506, 2010 WL 5423734, at *5 (N.D. Ill. Dec. 23, 2010)(Judge Kennelly). As shown above, Plaintiffs have met this lenient standard.

The FLSA statute of limitations continues to expire daily for thousands of janitors. This Court should allow Plaintiffs to issue to attached proposed Notice and Consent Form. For the reasons set forth above, Plaintiffs respectfully request that this Court enter an order granting the following relief:

(1) Granting conditional collective action certification of the Class defined above;

(2) Authorizing the attached notice of this action to be sent to the Class defined above, and allow them the opportunity to opt-in as party plaintiffs pursuant to Section 16 of the FLSA, 29 U.S.C. § 216;

(3) Ordering Defendants to produce, within seven (7) days of the Court's Order, the names and last known home addresses, email address and phone number of all janitors who have worked for Defendants within the last three (3) years and who recorded their time on manual punch cards or who had their hours worked processed through Defendants' proprietary software and reported on the electronic "Punch Summaries"; and

(4) Granting such further relief as this Court deems equitable and just.

Date: July 19, 2013                    Respectfully Submitted,

                                       /s/ Thomas M. Ryan
                                       Attorney for Plaintiffs

Thomas M. Ryan
Law Office of Thomas M. Ryan, P.C.
35 E. Wacker Drive, Suite 650
Chicago, IL 60601
312.726.3400

Glen J. Dunn, Jr.
Glen J. Dunn & Assoc.
221 N. LaSalle St., Suite 1414
Chicago, IL 60601
312.545.5056

Brendan J. Donelon
Daniel Craig
Donelon, P.C.
420 Nichols Road, Suite 200
Kansas City, Mo. 64112
816.221.7100