UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRICE IKBY BINISSIA and HALINA SUCHECKA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ABM INDUSTRIES, INC.; ABM JANITORIAL SERVICES, INC.; ABM JANITORIAL SERVICES – NORTH CENTRAL, INC.; ABM JANITORIAL SERVICES – MIDWEST, LLC; and ABM JANITORIAL SERVICES – SOUTHEAST, LLC,<br><br>Defendants. | Case No. 13 C 1230<br><br>Judge Joan B. Gottschall |

## MEMORANDUM OPINION & ORDER

Plaintiffs Brice Binissia and Halina Sucheka have sued ABM Industries, Inc. ("ABM") and its corporate subsidiaries (collectively, "Defendants"), alleging that Defendants failed to compensate them for pre-shift compensable activities in violation of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq.* They ask the court to conditionally certify a collective action and send notice to the prospective members of the plaintiff class. At this early stage in the case, Plaintiffs need make only a modest factual showing that they and other potential plaintiffs were victims of a common ABM policy or plan that violated the FLSA. Because the court finds that Plaintiffs have made that modest showing here, the court grants the motion to certify a collective action.

# I. BACKGROUND

ABM and its subsidiaries employ janitors who work in office buildings throughout the country. At issue here are the timekeeping practices of two of ABM's regional subsidiaries: ABM Janitorial Services North Central, Inc. ("ABM North Central") and ABM Janitorial Services Northeast, Inc. ("ABM Northeast"). Plaintiffs allege that since February 2010, ABM has unlawfully rounded the punch-in times for janitors who work in the North Central and Northeast regions. For example, if a janitor clocked in to work at 8:46 a.m. and immediately began working, ABM would round that janitor's clock-in time to 9:00 a.m. If that janitor clocked out at 5:00 p.m., ABM would pay the janitor for only 8 hours of work. Plaintiffs allege that when this rounding occurred during weeks in which janitors were paid only forty hours of regular pay, the eliminated time constitutes lost overtime pay under the FLSA.

Plaintiffs Brice Binissia and Halina Suchecka worked as janitors for ABM in Chicago. Mr. Binissia used a punch card to report his time. The complaint alleges that, for janitors like Mr. Binissia, ABM instructed local supervisors to manually adjust their punch-in times to conform to their scheduled shift times. Supervisors did this by writing the number "8" next to the janitors' shift times on the punch cards, which were then submitted to ABM's regional payroll processing center. ABM's payroll department then used the janitors' rounded time to calculate their paychecks.

Ms. Suchecka used an electronic timekeeping system to report her time. The complaint alleges that, for janitors like Ms. Suchecka, ABM's payroll software program, known as Epay, rounded their actual punch-in times to their scheduled shift times. This rounding was reflected in "punch summaries," which contained columns showing the janitors' actual punch times and

rounded punch times. ABM paid janitors who used electronic timekeeping systems based on their rounded time rather than the actual time that they worked.

Both Mr. Binissia and Ms. Suchecka claim that they performed compensable work during the time that was rounded away. They allege that all janitors who worked for ABM North Central or ABM Northeast since February 14, 2010, have been victims of ABM's unlawful rounding policy. As of June 24, 2013, approximately 210 janitors have joined this lawsuit as plaintiffs. Ninety-four janitors have submitted declarations stating that they regularly punched in before the start of their scheduled shifts and performed work during the time that was rounded away.

In support of their motion to conditionally certify a collective action, Plaintiffs have submitted deposition testimony from ABM Vice Presidents Alex Tarazi and Raymond Suerth. At his deposition, Mr. Tarazi stated that, from February 15, 2010, to around September 2012, all janitors in the Northeast region who used electronic timekeeping had their punch times rounded. (Pl.'s Mem. in Supp. Ex. 4 (Tarazi Dep.) 33:19-9, ECF No. 137.) Mr. Tarazi explained that the Epay computer program applied "rounding rules" to round the janitor's actual time worked to the scheduled shift time. The payroll department then paid the janitor based on the rounded time. Mr. Tarazi believed that the Epay program applied a fifteen minute rounding rule before the beginning of a janitor's shift and allowed a five minute grace period after the beginning of the shift. He stated:

> [T]he way I understood it . . . you could come to work at 3:45 – I mean, punch at 3:45 and your scheduled shift starts at 4:00. So if you punched anywhere – say, you punched at 3:50, your pay will start at 4 o'clock. If you came – if you came to work and punched a[t] 4:05, then it will put you back to 4 o'clock.

(*Id.* at 79:17-25.)

ABM North Central Vice President, Raymond Suerth, also testified that, to the best of his knowledge, every janitor in the North Central region whose time was kept using the Epay system was subject to rounding rules from 2010 to 2012. (Pl.'s Mem. in Supp. Ex. 5 (Suerth Dep.) 44:24-45:6; 55:2-6, ECF No. 137-1.) When asked, "[Did] every janitor that used th[e] EPAY system in 2010, 2011, and 2012 . . . have their time rounded[?]" he responded, "Yes. If they were on the EPAY system in the North Central [region] during that period, yes." (*Id.* at 55:2-6.) When asked, "And those rounding rules apply uniformly to all those janitors on the EPAY system in the years 2010, 2011, and 201[2]?" he responded, "For North Central, yes." (*Id.* at 55:11-14.)[1]

Local ABM supervisors also admitted that ABM rounded janitors' punch times. Marlin Hunt, a project manager at ABM in Chicago, stated that his field manager trained him to instruct janitors to arrive early, before the start time of their scheduled shift, so that they could change into their uniforms, punch in, collect their supplies, and get to their designated areas to begin cleaning. He trained foremen to give janitors these same instructions. He was also trained to review punch cards and to prepare spreadsheets summarizing the number of hours that his janitors worked. Hunt stated that, unless a janitor had obtained prior approval for overtime work, he would "enter the scheduled shift times (8 hours) into the summary spreadsheets, rather than the actual punch times on the punch cards, as the hours worked by each janitor during the pay period on the timesheet summary." (Pl.'s Mem. in Supp. Ex. 9 (Hunt Decl.) ¶ 10, ECF No. 138-

---

[1] Suerth testified that he believed that ABM would round up or down "at the 7-and-a-half minute mark." (*Id.* at 51:20-22.) For example, he believed that ABM would round a punch-in time of 8:51 a.m. to 8:45 a.m., and would round a punch-in time of 8:53 a.m. to 9:00 a.m. Plaintiffs, however, have submitted evidence suggesting that Suerth misunderstood ABM's rounding practice, and that ABM actually rounded janitors' punch-in times to their scheduled shift times, even if the punch-in time was greater than seven-and-a-half minutes before the scheduled shift time. (*See, e.g.*, Pl.'s Mem. in Supp. Ex. 12 (Suchecka Punch Summaries), ECF No. 138-4 (showing that a punch-in time of 4:51 p.m. was rounded to 5:00 p.m.).)

1.)  He stated that he regularly handwrote the number "8" next to a janitor's shift on the punch card, even if the janitor actually worked more than eight hours.  He stated that he attended training seminars with other ABM supervisors in conference rooms at the Lyric Opera House in Chicago, where the head of the payroll department for ABM's Midwest Region instructed supervisors to round shift punches of individual janitors by handwriting "8" next to each shift punch and to enter forty hours on the summary spreadsheets for each week unless there was approved overtime.

Antoni Chmenia, a janitorial foreman for ABM at two locations in Chicago, also stated that he was trained to enter a janitor's scheduled shift times into the summary spreadsheets, rather than the actual punch times on the punch cards.  Chmenia's field manager trained him to handwrite the number "8" next to a janitor's shift on the punch card, even if the janitor actually worked more than eight hours.  Chmenia's supervisor provided him with written materials from ABM training seminars that instructed him to write an "8" on punch cards and enter forty hours for every week a janitor worked in the summary spreadsheets.

Plaintiffs have also submitted punch summaries from janitors in Ohio, Kentucky, Connecticut, Massachusetts, Maryland, New York, Pennsylvania, and Virginia.  Plaintiffs retained Dr. Albert Madansky, a professor emeritus at the University of Chicago, to review the punch summaries to determine whether they exhibited a common policy of rounding.  He concluded that the punch summaries from these states "demonstrated that ABM rounded at each of the locations where these employees worked [and] demonstrate[d] [that] rounding exists in ABM's time keeping system . . . ."  (Pl.'s Mem. in Supp. Ex. 15 (Madansky Report) 1, ECF No. 139-2.)

Plaintiffs contend that this evidence shows that they and other janitors employed in the North Central and Northeast regions were victims of a common ABM policy or plan that violated the FLSA. They move the court to conditionally certify the following class:

> All janitors (or employees performing similar duties) employed by Defendants from February 14, 2010 to the present who: (i) are, or were, employed in Defendants' North Central or Northeast regions; (ii) had clock-in and clock-out times recorded electronically or with a punch card on a time clock; and (iii) for one or more work weeks was paid forty hours at their regular rate of pay.

## II. LEGAL STANDARD

Section 216(b) of the FLSA permits plaintiffs to bring a "collective action" against an employer for unpaid overtime compensation on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b). Although the Seventh Circuit has yet to address how district courts should manage collective actions, courts in this district have commonly applied a two-part test to determine whether an FLSA claim may proceed as a collective action. *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008).

In the first stage, a court issues a "conditional certification" of the collective action if the plaintiffs show there are similarly situated employees who are potential claimants. *Id.*; *Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008). At this stage, a plaintiff must make a "modest factual showing" sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law. *Smallwood v. Ill. Bell Tel. Co.*, 710 F. Supp. 2d 746, 750 (N.D. Ill. 2010); *Jirak*, 566 F. Supp. 2d at 847. A modest factual showing requires "'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *Jones v. Furniture Bargains, LLC*, No. 09 C 1070, 2009 WL 3260004, at *2 (N.D. Ill. Oct. 9, 2009) (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)). The modest factual showing, however, cannot be founded solely on allegations in the complaint. *Molina v. First Line*

*Solutions LLC*, 566 F. Supp. 2d 770, 786 (N.D. Ill. 2007). Instead, plaintiffs must provide some evidence in the form of affidavits, declarations, deposition testimony, or other documents to support the allegations that other similarly situated employees were subjected to a common policy. *Id.* In the second stage, after the parties have engaged in discovery and the opt-in process is complete, the court reexamines the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial as a collective action. *Jirak*, 566 F. Supp. 2d at 848.

### III. ANALYSIS

**A. Conditional Certification**

There does not appear to be any genuine dispute that ABM had a uniform policy of rounding janitors' punch times in its North Central and Northeast regions. ABM officers stated at deposition that rounding occurred, and ABM confirmed in its responses to Plaintiffs' interrogatories that "there have been 'rounding rule' selections made in the Epay system during the statute of limitations period that appear to have essentially paid janitors according to their scheduled shifts . . . ." (Pl.'s Mem. in Supp. Ex. 3 (Interrogatory Responses) Ans. No. 1, ECF No. 136-3.) ABM does not oppose conditional certification on the ground that rounding did not occur. Rather, it argues that any such rounding policy did not violate the FLSA.

As an initial matter, the parties dispute whether the court need even inquire into whether ABM's rounding policy violated the FLSA at this preliminary stage. Plaintiffs contend that this is a merits question that the court need only address once the parties have completed discovery. They argue that the existence of a rounding policy is itself sufficient to determine at the first stage that the case may proceed as a collective action.

Plaintiffs' position has some support in the case law. *See, e.g.*, *Smith v. Safety-Kleen Sys., Inc.*, No. 10 C 6574, 2011 WL 1429203, at *4 (N.D. Ill. Apr. 14, 2011) ("Safety-Kleen argues . . . that the company does not exclusively benefit from its practice of rounding time to the nearest quarter hour. These arguments require factual determinations that are . . . premature at this stage of the proceedings." (footnotes omitted)). Other courts, however, have addressed whether the defendant's rounding policy violated the FLSA at the conditional certification stage. *See, e.g.*, *Adair v. Wis. Bell, Inc.*, No. 08 C 280, 2008 WL 4224360, at *11 (E.D. Wis. Sept. 11, 2008) (denying conditional certification where there was "no evidence" that the defendants' rounding policy violated the FLSA). This approach seems to be the more sensible one, as the law is clear that the court must determine not only whether the plaintiffs have made a modest factual showing that the defendants had a common policy or plan, but also that such policy or plan "violated the law." *Smallwood*, 710 F. Supp. 2d at 750. To do so, the court must make at least some preliminary inquiry into whether the policy or plan complied with FLSA regulations.

Turning to that inquiry here, the FLSA regulations regarding the use of time clocks and rounding state that "where time clocks are used, employees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods provided, of course, that they do not engage in any work." 29 C.F.R. § 785.48(a). They further state that rounding to the nearest quarter of an hour will be accepted for enforcement purposes "provided that it . . . will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." *Id.* § 785.48(b). ABM argues that Plaintiffs have not made even a modest factual showing that ABM's rounding policy violates these regulations. The court disagrees.

If janitors "engage[d] in any work" before their regular starting times but were not paid for that work under ABM's rounding policy, then that policy at least ostensibly violated FLSA regulations. *See* 29 C.F.R. § 785.48(a). Here, Plaintiffs have submitted declarations from ninety-four janitors who stated that they did, in fact, engage in work after they punched in but before their regular starting times. ABM argues that the court cannot extrapolate from these ninety-four janitors, all of whom worked in Chicago, to the over 60,000 potential class members who worked in office buildings across twenty-seven states. But there is no reason to believe that janitors in New York or Boston behaved differently than janitors in Chicago in this regard. At this preliminary stage, it would serve no purpose to require Plaintiffs to submit an affidavit from a janitor at every ABM location simply to establish the unremarkable proposition that janitors typically begin working once they punch in. Neither is it necessary for Plaintiffs to establish at this stage that ABM had a corporate policy *requiring* janitors to work before their scheduled start times. *See Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1237 (S.D. Ala. 2008) ("'Work not requested, but suffered or permitted is work time. . . . The reason is immaterial. . . .' 29 C.F.R. § 785.11. Defendant's apparent position that its employees cannot have viable FLSA claims unless HL-A 'required' them to work off the clock is inconsistent with applicable law.").

ABM argues that, even if the plaintiffs engaged in work before their regular starting times, and even if they were not paid for such work, ABM's practice of rounding away pre-shift time is expressly permitted under the FLSA. The FLSA permits rounding, however, only where it "will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." 29 C.F.R. § 785.48(b). Here, Plaintiffs have submitted evidence that, over time, ABM's rounding policy favored the employer over the employee in both the Northeast and North Central regions. With respect to the Northeast region, ABM's Vice

9

President testified that ABM rounded up to fifteen minutes away for pre-shift work but allowed only a five minute grace period if an employee arrived late. Thus, ABM Northeast's rounding policy was facially unequal and would appear to be inconsistent with FLSA regulations.

With respect to the North Central Region, ABM's Vice President testified that he believed ABM's rounding policy applied equally whether the employee arrived early or late. Plaintiffs argue, however, that even if the North Central policy was equal on its face, it was unequal in practice because employees were disciplined for arriving late. At least one court has found this argument to be persuasive. *See Austin v. Amazon.Com, Inc.*, No. 09 C 1679, 2010 WL 1875811, at *3 (W.D. Wash. May 10, 2010) (denying motion to dismiss FLSA claim involving facially neutral rounding policy because the FLSA regulation "does not contemplate the situation where an employer allows rounding . . . but disciplines the employee when the rounding does not work to the employer's advantage"). Additionally, Plaintiffs have submitted evidence suggesting that ABM's Vice President may have misunderstood ABM's rounding practice. Thus, the court will not deny collective action certification merely because ABM's Vice President stated that he believed the North Central rounding policy was applied equally whether the employee arrived early or late. Even were the policy equal on its face, it still may be unlawful under the FLSA, *see id.*, and, in any event, discovery may reveal that the North Central policy was not in fact equal on its face.

Finally, ABM argues that Plaintiffs' claims will require individual inquiries rendering them inappropriate for conditional certification. It argues that separate proof is necessary to establish "whether, why and how much janitors performed work outside of their scheduled shifts"; "whether [ABM] is entitled to offset paid non-working time against unpaid pre-shift

working time"; and "whether [ABM]'s 'rounding practice' benefited janitors or worked to their detriment." (Defs.' Br. 24, 28, 29, ECF No. 153.)

The court is not persuaded that the differences among the prospective plaintiffs render conditional certification inappropriate. The differences cited by ABM would exist in any FLSA case involving allegations of unlawful rounding, yet courts routinely grant motions to conditionally certify a prospective class in such cases. *See, e.g.*, *Smith*, 2011 WL 1429203, at *4 (rejecting argument that individual inquiries rendered conditional certification inappropriate because "'[i]f common questions predominate, the plaintiffs may be similarly situated even though the recovery of any given plaintiff may be determined by only a subset of those common questions'" (quoting *Alvarez v. City of Chi.*, 605 F.3d 445, 449 (7th Cir. 2010)); *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F. Supp. 2d 745, 757 (N.D. Ill. 2011) (finding that individualized inquiries concerning whether employees in fact worked during rounding period were "not sufficient to preclude certification at stage one of the analysis"); *see also Longcrier*, 595 F. Supp. 2d at 1239 (S.D. Ala. 2008) ("If . . . [Plaintiffs] are all harmed by the same company pay policies, then it is of no consequence whether their job duties are similar, what kind of work they performed, why they worked off the clock, and the like. What matters is that they did work off the clock, that [Defendants] required or permitted them to do so, and that they were not paid statutory overtime that was otherwise due."). As these cases demonstrate, ABM's arguments about differences among the prospective plaintiffs are more appropriately dealt with at the second stage of the collective action process, after discovery has been completed and the court is better-positioned to assess whether the plaintiffs are similarly situated. At this stage, it is sufficient that Plaintiffs have shown that ABM has a rounding policy that applied uniformly to

all potential plaintiffs and that the policy appears to be inconsistent with FLSA regulations. The court thus grants the motion to conditionally certify the proposed class.

**B. Notice/Discovery**

Plaintiffs request that the court approve their proposed form of notice (*see* Pl.'s Mem. in Supp. Ex. 27 (Proposed Notice), ECF No. 143-27), that the court require Defendants to post the notice near the time clocks in the buildings where the prospective class members work, and that Defendants be ordered to produce the names, last known home addresses, email addresses, and phone numbers of proposed class members.

In order to effectuate the opt-in procedures of the FLSA, the court has discretion to facilitate notice to potential plaintiffs. *Hoffmann-La Roche*, *Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989). The court has reviewed Plaintiffs' proposed notice. In general, the court finds that the notice is appropriate, except that the court encourages Plaintiffs' counsel to place the notice on their letterhead and not place the caption of the case on the first page of the notice. Otherwise, the notice may appear to have been sent by the court. *See Howard v. Securitas Sec. Servs., USA Inc.*, No. 08 C 2746, 2009 WL 140126, at *10 (N.D. Ill. Jan. 20, 2009). The court authorizes the notice to be mailed to the potential class, but will not order ABM to post the notice in its branches as, absent evidence that the mailing of notices is ineffective, such a method of notice is unnecessary and overly intrusive. *Id.*

The court also grants Plaintiffs' motion to require ABM to produce the names and last-known addresses of prospective class members. ABM must produce this information within fourteen days of this order. In consideration of the privacy rights of the prospective class members, the court will not require Defendants to produce phone numbers and e-mail addresses. *Id.*

## IV. CONCLUSION

Plaintiffs' motion to conditionally certify the collective action class is granted. Plaintiffs are authorized to send the proposed notice to the class defined in the motion. Within fourteen days of this order, Defendants shall produce the names and last known home addresses of all janitors who have worked for Defendants within the last three years and who recorded their time on manual punch cards or who had their hours worked processed through Defendants' proprietary software and reported on the electronic "punch summaries."

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: February 26, 2014